State ex rel. Murphy v. Burney.

---

THE STATE ex rel. DAVID A. MURPHY, Member of Board of Police Commissioners, v. CLARENCE A. BURNEY, Judge of Circuit Court, HIRAM W. HAMMIL et al.

In Banc, January 29, 1917.

1. **POLICE COMMISSIONERS:** Powers and Duties. The Board of Police Commissioners of Kansas City is created by statute, and its powers and duties are defined and limited by statute.

2. ————: Qualification to Hear: Complaints Against Officers. A police commissioner of Kansas City is not disqualified from sitting as a

member of the board at the hearing of charges preferred by him against a police officer. The facts that he made the complaint and that the charges if found to be true may result in the officer's removal, do not disqualify him from sitting as a member of the board, hearing evidence to support the charges, and taking part in the determination of the matter.

3. ———: **Administrative Body.** The Board of Police Commissioners of Kansas City in hearing complaints lodged against policemen for misconduct does not sit and act in a judicial capacity, but in an administrative capacity.

4. ———: **Complaints Against Policemen: No Other Judicatory.** The Board of Police Commissioners of Kansas City is the only body named in the statutes before whom complaints against policemen and police officers can be heard or tried; and the statute in requiring that "all complaints or charges filed by persons other than the commissioners, or police officers, shall be verified by the oath of the person filing such complaint or charges" contemplates that complaints or charges, to be tried by the board, may be filed by the commissioners themselves.

## Prohibition.

WRIT GRANTED.

*Isaac N. Watson* and *John T. Harding* for relator.

(1) A court of equity has no jurisdiction to enjoin relator from sitting at the hearing. Secs. 9771, 9776, 9784, 9785, 9769, R. S. 1909. The statute created, not a judicial board, but an administrative board, prescribed its duties, prescribed the manner of organizing a police force, and an exclusive manner of removal. The only way to remove respondents Hammil and James is the one prescribed by the statute, and this way has been followed. Counsel's contention that a police commissioner who files a charge against an officer is disqualified to sit at the hearing has no sure footing at law, and would be impracticable and render the police department inefficient. The chief duty of a commissioner is to maintain peace and to suppress vice. The statute, section 9785, unquestionably provides for commissioners to file complaints. Shannon v. Magee, 66 N. Y. Supp. 849; State v. Police Commissioners, 16 Mo. App. 48; State ex rel. v. Bright, 224 Mo. 514. (2) A court of

chancery has no jurisdiction to enjoin relator from hearing the charges. Hammil and James have their remedy at law. Vitt v. Owens, 42 Mo. 512; State ex rel. v. Aloe, 152 Mo. 480. (3) Relator is not required to plead to the jurisdiction of the circuit court before the petitions for this writ. State ex rel. v. Bright, 224 Mo. 526; State ex rel. v. Sale, 188 Mo. 496; State ex rel. v. Aloe, 152 Mo. 480.

*Robinson & Goodrich* and *F. R. Stivers* for respondents.

(1) It is well settled that prohibition lies only where the inferior court has no jurisdiction. Prohibition does not lie to correct errors. It matters not that the petition pending in the inferior court does not state a cause of action. The only question is one of jurisdiction. State ex rel. v. McQuillin, 260 Mo. 164; State ex rel. v. McQuillin, 262 Mo. 256; State ex rel. v. Gates, 190 Mo. 540. (2) The theory advanced by the injunction suits was that, under the law, relator being the real prosecutor and having already prejudiced the guilt of officers Hammil and James, was disqualified from acting as one of the triers of the charges filed against plaintiffs in those suits. In other words that in hearing said charges the members of the Board of Police Commissioners acted in a quasi-judicial capacity, and, generally, one cannot act in such capacity in his own case. Whether this be correct or not, Judge Burney's court had jurisdiction to pass upon it, and to decide that it was or was not correct. If decided erroneously, the error could have been corrected on appeal. The rule is well settled that a court of equity has power to prevent by injunctive relief all such officers as relator from violating their official duties. State ex rel. v. Lucas, 236 Mo. 31; Stahlhut v. Bauer, 51 Neb. 68; Armitage v. Fisher, 26 N. Y. Supp. 364. (3) The merits of the injunction suits not being involved herein are not open to discussion, but we submit a few remarks on that subject. We do not claim that relator was a judge. We do not deny that there is a difference between administrative boards and judicial tribunals. But

we claim that where a member of a police board or other such board sits in the hearing of charges against one of its officers, he acts in a judicial capacity, and if he is not the sole member of the board, but there are other members able to act, and he is the real prosecutor, he cannot act and has prejudged the case. The principle which forbids a man to act as judge in his own case would apply. If there is only a single member of such a board, he can act both as judge and prosecutor, out of the necessity of the situation, unless the statute forbid. In the absence of such a prohibition, the necessity of the case would imply power to act in both capacities. This is the distinction. People ex rel. v. Board of Trustees, 39 N. Y. Supp. 607; People ex rel. v. Waldo, 212 N. Y. 156; People ex rel. v. Roosevelt, 23 N. Y. App. Div. 533; Reid v. Medical Society, 156 N. Y. Supp. 780. (4) The positions of respondents, Hammil and James, are property rights and they are entitled to have such positions protected by injunction when other persons conspire to interfere with their enjoyment. Clarkson v. Laiblam, 178 Mo. App. 708; In re Heffron, 179 Mo. App. 639. (5) The better rule requires it to be made to definitely appear that the trial court has assumed jurisdiction before a writ of prohibition can issue. It is in the discretion of the supervising court to refuse to grant prohibition unless the lower court has overruled the plea to its jurisdiction. State ex rel. v. Riley, 127 Mo. App. 479.

FARIS, J.—This is an original proceeding in prohibition against respondent Clarence A. Burney, as one of the judges of the circuit court of Jackson County, to prohibit him from taking further cognizance of certain suits by injunction brought by respondents Hiram W. Hammil and R. L. James, the object of which latter proceedings was to enjoin relator (who is one of the Police Commissioners of Kansas City) from sitting in the hearing of certain charges pending against said Hammil and said James before said commissioners.

As forecast above, respondents Hammil and James are members of the police force of Kansas City; Hammil being chief of police and James a captain of police there-

in. Prior to the commencement before respondent Burney of the injunction proceedings, certain charges were caused to be filed by relator David A. Murphy in his capacity as a member of the Board of Police Commissioners of Kansas City, against respondents Hammil and James, which charges involved the official conduct of said last-named respondents as chief of police and captain, respectively. While separate actions were brought by Hammil and James seeking to enjoin relator as aforesaid, it is not necessary to cumber the record with the allegations in both of these injunction proceedings. That brought by respondent Hammil, we take it, is a fair type of both, and it contains, after the formal allegations of the official character of plaintiff therein as chief of police and defendant as commissioner of police, respectively, the below allegations, to-wit:

"Defendant has caused to be prepared and filed with the Board of Police Commissioners aforesaid, complaints against plaintiff, charging him with conduct unbecoming an officer of the police department, and has caused said complaints to be set for hearing before said Board of Police Commissioners at two o'clock on the afternoon of Wednesday, December 6, 1916; and defendant threatens to and will, unless restrained by this court, take part as a member of said Board of Police Commissioners in hearing and deciding said complaint, at such time as they may be called up for hearing before said board.

"Some weeks ago defendant wrongfully, fraudulently, oppressively and wickedly conspired and confederated with one John P. Mullane and others, all of whose names he is now unable to state, to cause the dismissal and removal of plaintiff from his said position and office as chief of police of said police department, and as part and parcel of said conspiracy said complaints were prepared by said Murphy in his own handwriting, but said Murphy fraudulently, wickedly and oppressively used his position as said commissioner to coerce and force a probationary patrolman of said city to sign charges to be preferred against plaintiff, so that the true attitude and connection of defendant therewith might be concealed."

The actions for injunctions filed respectively by respondents Hammil and James coming on to be heard before Judge Burney on December 6, 1916, he issued therein a temporary restraining order and fixed December 9, 1916, for hearing the application for the issuance of a temporary injunction. Pending the hearing upon such injunction relator presented his petition to this court and we issued therein a provisional writ of prohibition, directed to Judge Burney, prohibiting him, till our further order, from hearing or proceeding further in said injunction suits. Thereafter Judge Burney filed herein his return; following which, relator filed a motion for judgment on the pleadings.

The case has been briefed and being a matter wherein both parties deem that the public interests require a speedy determination, it was submitted to us without argument; an order entered herein making our provisional writ absolute, and the matter of filing a written opinion deferred till a more convenient season.

The sole proposition involved is whether relator Murphy, who caused to be filed the charges against respondents Hammil and James, is for that he caused the filing of said charges, disqualified from sitting as one of the Police Commissioners of Kansas City in the trial of said latter respondents upon such charges; relator taking the position that he is not so disqualified and respondents taking the position that he is disqualified. If he is disqualified then our preliminary writ herein should be quashed; if he is not, then such writ must be made absolute.

The Board of Police Commissioners of Kansas City consists of two members (who are appointed by the Governor) and of the mayor of that city, who is a member *ex officio* of such board. It thus appears as a matter of interest, without perhaps affecting the point at issue, that there are two members of the board charged under the statute with the duty of trying the charges against respondents Hammil and James, against whom no attack is made.

The Board of Public Commissioners of Kansas City is created by, and therefore "lives and moves and has its being" solely pursuant to statute. [Sec. 9771, R. S. 1909.] The duties of such Board of Police Commissioners are likewise prescribed by statute and are broad and comprehensive; as note the statute defining those duties, which reads thus:

"They shall at all times of the day and night, within the boundaries of the city, as well on water as on land, preserve the public peace; prevent crimes and arrest offenders; protect the rights of persons and property; guard the public health; preserve order at every public election and at all public meetings and places, and on all public occasions; prevent and remove nuisances on all streets, alleys, highways, waters and other places; provide proper police force at every fire for the protection of firemen and property; protect emigrants and travelers at steam boat landings and railroad stations; see that all laws relating to elections, lotteries and lottery policies, and to the observance of Sunday, and relating to pawnbrokers, intemperance, vagrants, disorderly persons, gambling and bawdy houses, and every other kind and manner of disorder and offense against the public health and good order of society are enforced, and shall enforce all laws and ordinances which may be properly enforceable by such police force."

In order to carry out the broad and onerous official burdens laid upon these commissioners, the statutes provide that such board is authorized and required to employ a permanent police force and it is given power to equip and arm the same in such wise as they may deem necessary. [Sec. 9776, R. S. 1909.] Relative to the manner of appointing and removing the members of such permanent police force and to guide and restrict the actions of such board in those behalves, it is further provided by statute that "they will in no case and under no pretext appoint or remove any policeman, or officer of police, or other person under them, for, or on account of the political opinions or affiliations of such policeman, officer or other person, or for any other cause or reason than

the fitness or unfitness of such policeman, officer or other person;'' and to this end and substantially in the above terms the members of the board are required to make oath. [Sec. 9769, R. S. 1909.]

Touching the conditions under which the removal of any policeman, or of any officer of police, may be had, and the manner-and method of such removal, the statute among other things provides thus:

''Having served one year probationary service to the satisfaction of the board, such policemen and police officers may be appointed for an additional term of three years, and shall thereafter be subject to removal only for cause and upon complaint being made, or charges being preferred against them, a copy of which complaint or charges, setting forth the grounds thereof, shall be given to such policeman not less than forty-eight hours prior to the time the complaint or charges are to be heard by the board, and they shall have a right to appear before the board and be confronted by the witnesses against them, and to be defended by counsel, and the board, after hearing the charges, shall take a vote by yeas and nays, to be entered upon the records whether or not the charges have been sustained, and what punishment, if any, shall be imposed. If the charges are found by the board to be sustained by the evidence, the board may remove such policemen or police officers, or the board may, instead of removal, suspend, reprimand or impose a fine upon the policeman or police officer, and in case any fine so imposed is not paid, the same shall be deducted from the salary of such policeman or police officer. If complaint is made or charges preferred against a policeman or police officer, which, in the opinion of the board, does not constitute an offense of which the board should take cognizance, the board shall dismiss such complaint or charges.'' [Sec. 9784, R. S. 1909.]

It is clear we think, that the statutes governing the matter of charges and complaints against policemen and police officers, contemplate that charges may be filed with the Board of Police Commissioners, not only by private persons and individuals, but also by the Board of Police

Commissioners, or by any individual member of such board. For we note in section 9785, Revised Statutes 1909, the provision that "all complaints or charges filed *by persons other than the commissioners, or police offi-* *cers*, shall be verified by the oath of the person filing such complaint or charges." (Italics ours.) Section 9784, supra, is the only section of our statute governing the police force of Kansas City which provides for the removal for cause and upon charges and complaints of policemen and police officers of such police force; and the hearing before the Board of Police Commissioners in said section provided for is the *only* hearing possible to, be had. So it follows, that if said board may not hear complaints lodged against policemen and police officers, there is no place, board or person before which or before whom such complaints can be heard or tried. It is likewise clear that in hearing such complaints the Board of Police Commissioners sit and act not in judicial capacities, but in administrative capacities. [State ex rel. Heimburger v. Wells, 210 Mo. 601.]

The Wells case, supra, was a hearing by the defendant therein, who was at the time the mayor of the city of St. Louis, upon a complaint against Heimburger, relator therein, as Commissioner of Public Buildings of the city of St. Louis. In such hearing upon charges filed, Mayor Wells was proceeding and acting under charter provisions, in all respects, so far as concerns the legal principle involved, similar to the statutes here under discussion. The point involved upon the appeal in the Wells case was identically the same question here confronting us, that is, whether the fact that the complaint was caused to be filed by an administrative officer who by charter was authorized and empowered to hear those charges, disqualified such officer from hearing the same. Passing upon this identical point Fox, P. J., in an opinion unanimously concurred in by Division Two of this court, said:

"As already stated, the charter provisions imposed the duty upon the mayor to see that the laws of the city and ordinances of the city are respected and enforced.

In other words, it is made his duty to see that the officers appointed by him are not derelict in the discharge of their duties, and the mere fact that his secretary prefers the charges against one of the officers in one of the departments, or even if the mayor should make out the charge himself, it by no means follows that he is prejudiced or biased or has any other interest in the proceeding than to ascertain whether or not the charges are true. The mayor has certain duties imposed upon him and he is entitled to the presumption that he will conscientiously and in good faith discharge those duties.    It certainly would be a very violent presumption that the mayor of a great city in the investigation of charges against officials acted from spite or any other improper motive. The only presumption that can be indulged, in the absence of any showing to the contrary, is that he is acting in obedience to the commands of the organic law of the city of which he is the chief executive.''

We do not think there can be any question but that the Wells case, supra, and the cases from this court in the Wells case cited and discussed, rule this one upon principle; nor have we any doubt that the reason of the thing points inexorably to the same view.    For we have seen that by statute an onerous and broad duty is placed upon the Board of Police Commissioners of Kansas City, to provide a capable and efficient police force and to use that force in preserving peace and order in their city. We must assume that the individual members of the Board of Police Commissioners will honestly, properly and efficiently perform the duties saddled upon them by statute    (State ex rel. v. Wells, supra;  State ex rel. v. Walbridge, 119 Mo. 383), and which by solemn oath they have bound themselves properly, efficiently and honestly to perform.    We have seen that the sole judicatory by which trials of charges against policemen and police officers may be had, is before this board itself, and that it may hear complaints filed as well by its own members as by other police officers and by private individuals.

Sad we opine, would be the condition, as regards peace and good order, of any city as large as we judicially notice Kansas City to be, if its Board of Commissioners had to sit quietly and supinely by until some private individual should take the trouble and initiative' himself to file charges against members of the police force, and personally to prosecute those charges before this board. It was a wise provision of the Legislature therefore which put the power, and in a way the duty, of filing these charges and complaints (should such be deemed necessary), in the very hands of those officers who are under their oaths charged by law with the providing and maintaining of an efficient police force. So we need not belabor the point further. The case cited above, so far as this jurisdiction is concerned, is directly in point, and if the rule in other jurisdictions (depending it may well be, upon other and different statutes and constitutional provisions), is different from that in this State, that is no concern of ours.

It follows that our provisional writ of prohibition issued herein against respondent Burney, should be made absolute. Let this be done. All concur, except *Bond,* *Blair* and *Williams,* JJ., who do not sit.