[S. F. No. 8727. In Bank.—December 31, 1918.]

FEDERAL CONSTRUCTION COMPANY ( a Corporation), Petitioner, v. J. E. CURD, Superintendent of Streets, etc., et al., Respondents.

STREET LAW—ASSESSMENTS—INTEREST OF MEMBERS OF LEVYING BODY—OWNERSHIP OF PROPERTY NOT DISQUALIFICATION.—The interest which one or all of the members of boards of supervisors, boards of trustees, city councils, or other municipal bodies charged with the making or rectifying of assessments for street or other improvements, may have, arising from the fact of their ownership of property, directly affected by the proposed improvement, does not create such a disqualification to sit or act in the premises as to render their action void as not constituting due process of law.

APPLICATION for a Writ of Mandate originally made to the Supreme Court to compel a certification of unpaid street assessments. Denied.

The facts are stated in the opinion of the court.

Morrison, Dunne & Brobeck, Maurice E. Power, and Raymond Benjamin, for Petitioner.

Guy Knupp, C. L. Russell, C. L. Russell, Jr., Geo. G. Murry, and Thomas, Beedy & Lanagan, for Respondents.

RICHARDS, J., *pro tem.*—This is an application for a writ of mandate by which the petitioner seeks to compel J. E.

Curd, as superintendent of streets of the city of Porterville, California, to certify to W. L. Graham, as the treasurer of said city, a list of unpaid assessments upon certain street improvement work alleged to have been done therein by the petitioner, and to direct the said treasurer to issue street improvement bonds thereon, representing the amount of said unpaid assessments. The facts giving rise to this proceeding are practically undisputed and may be stated as follows:

In the month of July, 1915, the city of Porterville, through its regularly constituted officials, initiated proceedings under the Street Improvement Act of 1911 for the improvement of certain of its streets, and in the course thereof duly entered into fourteen certain contracts in writing with the petitioner or its assignors herein whereby the latter agreed to perform certain street work, therein described, in accordance with certain plans and specifications adopted by the board of trustees of said city. The petitioner alleges, and for the purpose of considering the questions of law raised herein it may be taken to be true, that all of the work required to be done by the petitioner or its assignors under the terms of said contracts was performed and completed by it on December 15, 1915, and was then accepted by the superintendent of streets and his certificate of acceptance and approval duly issued. Thereafter, and during the month of October, 1916, the said superintendent of streets prepared and made assessments, as required by said act, covering the cost of the work performed under each of said contracts, and also prepared, in connection with such assessments, a diagram of the streets on which said work had been done; and thereupon attached to each of such assessments a warrant authorizing the petitioner, as such contractor, to demand and receive from the owners of the property, subject to such assessments, the amounts shown to be due thereon. Each of said warrants was dated on the twenty-eighth day of October, 1916. In the preparation of said assessments and warrants the said superintendent of streets made use of loose leaves especially prepared and intended for insertion in a lock-book also prepared to receive and hold the same; and as each of said assessments and warrants was completed by said superintendent of streets it was fastened in said lock-book, which was marked and entitled "Street Assessments of the City of Porterville." The diagrams of the streets included in said work were also similarly placed in

said book and the said warrants, assessments, and diagrams as so placed were signed by the superintendent of streets and countersigned by the president of the board of trustees of the said city of Porterville, on October 28, 1916. That thereupon, and on said twenty-eighth day of October, 1916, the said superintendent of streets recorded said assessments and warrants in his office, as required by law. Subsequent to the performance of the foregoing acts, and within thirty days thereafter, the said superintendent of streets delivered said assessments and warrants to the said petitioner, pursuant to the requirements of said Street Improvement Act, and between the date of the said receipt thereof and the twenty-first day of November, 1916, the said petitioner made the demand required by said act upon each of the persons assessed for the amount of their respective assessments, and, having done so, the said petitioner redelivered to the said superintendent of streets each and all of such assessments and warrants with its return as to such demand duly indorsed thereon, which said return was thereupon indorsed by said superintendent of streets upon the record thereof, as required by law. Thereafter, and on November 25, 1916, a number of the persons whose property had been assessed according to said assessments filed with the clerk of the board of trustees of said city, their objection, in writing, thereto, setting forth as the ground of their said objections that the said contractor had not completed its said contracts in accordance with the plans and specifications thereof. Due notice was given of these objections, and the matter of the hearing thereon was fixed for the fourth day of December, 1917. Only three members of said board of trustees were present at the hearing upon said objections. It is alleged by the petitioner herein, and is not controverted, that each of the said three members of said board so conducting and participating in said hearings and rendering their and each of their decision upon the same, was an owner or was interested in one or other of the parcels of land upon which such assessments had been imposed, and in respect to which said objections had been filed and upon which objections said hearing had been had. It was also alleged, and not controverted, that the attorney for the said protestants was at the time thereof and of the hearings thereon a law partner of the city attorney of said city who was then directly interested in the outcome of such hearings and was thereby

biased and prejudiced against the said contractor, and who advised and urged the said board of trustees to sustain said objections. At the time of such hearings the petitioner herein objected to the said members of said board sitting upon the hearings thereon or deciding or determining the matter of said protests and objected to their determination thereof, but notwithstanding its said objection the said board of trustees and the said members thereof proceeded to hear and to determine said objections and to make and enter the order of said board sustaining the same. Notwithstanding said determination and order the petitioner herein has demanded of the superintendent of streets that he make and certify to the city treasurer a list of all of said assessments which are unpaid, and has also demanded of the said city treasurer that he thereupon make out and deliver to the petitioner bonds representing such unpaid assessments. Said officials having refused to comply with these demands, this proceeding has been instituted by said contractor, the petitioner herein.

The single question requiring determination in this case relates to the right and power of the city council, acting solely through and by the aforesaid three members thereof, to sit and act as a judicial body in the hearing and determination of the aforesaid appeals and protests of the property owners as to the proper completion of the said work of street improvement, in compliance with the contract providing for the same, and as to the validity of said assessments claimed to be due and payable from them thereon. It is the contention of the petitioner herein that the three members of the city council, who assumed to sit and act upon the hearing of said appeals and protests, were disqualified to so sit and act by reason of their, and each of their, interest in property directly affected by such assessments and directly involved in and represented upon said appeals, and that the compulsion which the act imposed upon the petitioner to submit the issues raised upon said appeals and protests as to the sufficiency of its compliance with its said contracts and as to its right to have said assessments levied and collected and said warrants paid, to a tribunal thus composed of persons interested in the determination of such issues adverse to said petitioner amounted to a denial to it of due process of law. In making this contention the petitioner herein is drawn to the extreme position of claiming that the portions of the act

under review which provide for appeals by property owners to the city council for relief from the assessments sought to be imposed upon their property, upon the ground of irregularities on the part of the street superintendent in levying the same, or upon the ground that the contract has not been fully or properly performed, is unconstitutional and void for the reason that no provision is made for the hearing upon such appeals before a judicial body whose membership is not interested in the result of such appeals, and hence, that such provisions should be eliminated from the body of the act; and that being eliminated and the right of property owners to have and take such appeals being thus taken away, the petitioner would be entitled to the writ of mandate which it seeks by this proceeding. To adopt this view would be to deny to property owners any right of appeal to the city council under this act, no matter how irregular the proceedings of the street superintendent, or how incomplete or insufficient the performance of the contract, might be—a consequence quite as disastrous to the property owners in the denial of their constitutional right to due process of law as the alleged denial to the petitioner of the similar right would be. While for this reason alone we would be very reluctant to adopt a view which would lead to such a consequence, and while for the added reason that its adoption would compel the conclusion that the entire act was invalid upon the authority of *Hutson* v. *Woodbridge Protection Dist.*, 79 Cal. 90, [16 Pac. 549, 21 Pac. 435] (a result which the petitioner herein would probably not relish), we would not wish to adopt it, we think that there are other and sufficient reasons why the contention of the petitioner herein cannot be sustained.

Conceding it to be true, as a rule of ethics, that no person or body of persons should sit in judgment in cases and proceedings in which they are interested parties; and conceding, also, that it has been frequently and properly held that the attempted violation of this ethical rule by persons presiding over causes triable in the ordinary courts of justice, amounts to a denial of due process of law to those who are injuriously affected by such denial, yet, to this there are certain exceptions which are said to spring from the necessity of the situation. The statement in general terms of the principle underlying these exceptions is to be found thus stated in 23 Cyc. 581: ''Where disqualification if permitted to prevail destroys

the only tribunal in which relief may be sought and ·thus effectively bars the doors of justice, the ·disqualified judge is bound to hear and decide the cause.'' The particular application of this principle has been most frequently made to the class of *quasi*-judicial bodies of which the city council of Porterville is an example, such as boards of supervisors, city councils, boards of trustees, boards of equalization, commissioners of irrigation and drainage districts, and the like. While these various bodies are as a rule executive and administrative as to most of their functions, there are certain matters committed by the law of their creation to their judgment and discretion, which matters are judicial in their nature; such as the fixing of water rates, the equalizing of taxes, the determination of benefits, the correction of errors in assessments and the like.   Quite frequently the entire community to which the members of these boards or bodies belong are directly and beneficially interested in the result of the hearing and determination of such matters and they themselves are, therefore, interested parties therein.   Of necessity, therefore, in many of such matters, unless the members of the *body designated by statute as the sole body to hear and de- termine the same are qualified* notwithstanding their interest so to do, they never could be determined without recourse in every instance to actions in regularly constituted judicial tribunals.   The state of California, in common with practically every other state in the Union, has committed itself to the more practical plan of relegating all such matters to the local boards, councils, or other municipal bodies, and of providing that they shall have jurisdiction to decide them, not-withstanding the fact that some or all of the persons constituting their membership may be more or less directly interested in the result of their action.   In the case of *Hibben* v. *Smith,* 191 U. S. 310, [48 L. Ed. 194, 24 Sup. Ct. Rep. 88, see, also, Rose's U. S. Notes], the question was directly presented to that tribunal in an action involving the validity of a street assessment where the members of the board of town trustees levying the assessment were residents and taxpayers of the town, and where two of their number were owners of lots abutting upon the immediate improvement.   The court said: "The objection to the tribunal constituted by the legislature of Indiana, which the plaintiff in error makes in this particular instance, is that it results in making a person a judge in

his own case, and that hence any judgment of a tribunal thus constituted is absolutely void, and may be attacked, as it is attacked in this case, collaterally. It is said that to impose an assessment, which is the same as a judgment under such circumstances, is to take the lot owner's property without due process of law, and violates thereby the federal constitution. We think the first objection, that all of the members of the board of trustees were residents of and taxpayers in the town, is wholly unimportant. We have not the slightest doubt of the power of a legislature of a State, unless hampered by some special constitutional provision, to create a tribunal in a city or town, such as the common council or board of trustees, to make an assessment, and that such assessment would be valid, notwithstanding the fact that every member of the board was a taxpayer of the city or the town. It is a matter of legislative discretion as to how such a board shall be constituted, and we hazard nothing in saying that it is quite common throughout the country for the legislatures of the States to create a tribunal for levying assessments for local improvements in a manner precisely like the case in question. It is not at all analogous, even in principle, to a judge of a court acting in a case in which he is personally interested.

''To say that no one who was a taxpayer in a city or town could act in imposing an assessment upon property therein is to say that the legislature is wholly without power, by reason of the Federal Constitution, to constitute a tribunal to make an assessment where such tribunal is composed of taxpayers in the city or town. This we do not believe. . . . Whether a judgment obtained in a case like this, where two members of a general board created by statute for the purpose of making it, had some interest in some of the property subject to the assessment, was a void or voidable judgment, is a proper question for the state court to decide. A state court has the right to place its own construction upon its own judgments, and where, as in a case like this, it holds that the judgment is not void and that it cannot be attacked collaterally, we ought to follow that determination. *Newport Light Co.* v. *Newport,* 151 U. S. 527, 539, [38 L. Ed. 259, 14 Sup. Ct. Rep. 429, see, also, Rose's U. S. Notes].

''In *Lent* v. *Tillson,* 140 U. S. 316, [35 L. Ed. 419, 11 Sup. Ct. Rep. 825], which was an assessment case, it was stated by

Mr. Justice Harlan, in delivering the opinion of the court (p. 333), as follows:

" 'Other objections have been urged by the plaintiffs which we do not deem it necessary to consider. For instance, it is said that the mayor of the city of San Francisco, one of the Board of Commissioners, was himself the owner of a lot on Dupont street, and, for that reason, was incompetent to act as one of the board of street commissioners. . . . In respect to all these and like objections, it is sufficient to say that they do not necessarily involve any question of a Federal nature, and so far as this court is concerned, are concluded by the decision of the Supreme Court of California.' " The case of *Lent* v. *Tillson, supra,* from which the last above quoted citation was made, was decided by this court in 72 Cal. 404, [14 Pac. 71], and that decision of this court, to which the above quoted passage refers, has thus stood as the judicial declaration of the law of this state touching the question now before us, for the past thirty years, during which time practically every existing statute governing the subject of street improvements has been enacted. In the case of *People* v. *Sacramento Drainage District,* 155 Cal. 373, [103 Pac. 207], wherein the question arose as to whether the members of the board of drainage commissioners were disqualified to act as a tribunal to hear objections to the assessment by reason of the fact that they were land holders within the district, this court held that they were not disqualified by their interest, basing its decision to this effect upon the authority of *Hibben* v. *Smith, supra.* It would thus seem to be settled that the interest which one or all of the members of boards of supervisors, boards of trustees, city councils, or other municipal bodies charged with the making or rectifying of assessments for street or other improvements, may have, arising from the fact of their ownership of property directly affected by the proposed improvement, does not create such a disqualification to sit or act in the premises as to render their action void as not constituting due process of law. This being so, and the city council having heard the appeals and protests of the property owners and having sustained the same, and the record herein failing to show that any further steps have been taken by the petitioner herein to complete the said work of street improvement, or to rectify the assessments therefor in accordance with the decision and determination of the said city council, it follows

necessarily that the petitioner has not presented to this court such an application as would be sufficient to require the issuance of a writ of mandate herein, and that the demurrer of the respondents thereto must be sustained.

Writ denied.

Sloss, J., Wilbur, J., Lorigan, J., and Angellotti, C. J., concurred.

Rehearing denied.

Shaw, J., Sloss, J., Melvin, J., Lawlor, J., Wilbur, J., and Angellotti, C. J., concurred.