[Civ. No. 2362. Third Appellate District.—September 14, 1921.]

DRURY BUTLER, Petitioner, v. JOHN S. SCHOLE-FIELD, as Supervisor, etc., Respondent.

[1] COUNTIES—CHARGES AGAINST EMPLOYEE BY SUPERVISOR—TRIAL—COMPETENCY TO ACT.—While it cannot be doubted that boards of supervisors when engaged in the prosecution of an investigation of charges or misfeasance, nonfeasance, malfeasance, or other dereliction of duty by an employee or officer of the county appointed by such board, in a sense, exercise judicial functions, strictly speaking such investigations are merely administrative, and a member of the board who has filed charges for the removal of such an employee may sit in judgment on the latter.

[2] ID.—COUNTY ENGINEER—TRIBUNAL FOR TRIAL OF CHARGES.—It is clear from the statute authorizing the appointment of county

engineers by the boards of supervisors (Stats. 1919, p. 1290), that the legislature intended in a case where the engineer appointed is charged with dereliction of his duties as such to constitute the board of supervisors itself the sole tribunal by which such charge or charges should be heard and determined, and it is not required that resort be had to sections 758 and 772 of the Political Code.

[3] ID. — TRIALS BY BOARDS OF SUPERVISORS — INAPPLICABILITY OF RULES GOVERNING JUDICIAL TRIBUNALS.—Trials of charges against an officer or employee of a municipality or county are not controlled by or subject to the rules that appertain to judicial tribunals, where the legislature has expressly given the governing body of the municipality or county the exclusive cognizance or jurisdiction of such trials.

PROCEEDING on application for a Writ of Prohibition to prevent a member of a board of supervisors from sitting with such board on the trial of charges against a county engineer. Denied.

The facts are stated in the opinion of the court.

Butler & Van Dyke for Petitioner.

Hugh B. Bradford and White, Miller, Needham & Harber for Respondent.

HART, J.—This is an original application for a writ of prohibition. .

The petitioner is and was, for some time prior to the institution before the board of supervisors of said county of Sacramento of a proceeding looking to his discharge therefrom, county engineer of said county, having been duly appointed by said board of supervisors to perform and discharge the duties of said position (Stats. 1919, p. 1290). The respondent, as the title of this proceeding indicates, is and has been for several years a duly elected and qualified member of said board of supervisors and regularly acting as such member.

On the thirty-first day of May, 1921, there were filed before and with said board written charges against the petitioner, accusing him of having committed, in his official capacity of county engineer of said county, "numerous offenses of misfeasance and malfeasance in office, of inefficiency, neglect of duty and misconduct in his said office."

It is alleged in the petition: "That said respondent, John S. Scholefield, has heretofore expressed his desire and intention to secure the removal of this petitioner as such county engineer, and that, in furtherance of his said desire and intention, said charges and specifications were formulated and prepared at the instigation of respondent, John S. Scholefield, and at his special instance and request and by his, said John S. Scholefield's procurement, and were signed by Ford P. Gage and Maurice Leavitt, who allege themselves to be residents, electors and taxpayers of Sacramento county."

It is further alleged in the petition: "That respondent, John S. Scholefield, as Supervisor of Sacramento County, threatens and intends, and, unless prohibited by the order of this court, will proceed to sit in judgment upon said charges and will proceed to vote upon their truth or falsity, and will proceed to vote upon the removal or retention of said Drury Butler, petitioner herein, as such County Engineer, and petitioner avers that John S. Scholefield has prejudged the said case and is solicitous for petitioner's removal and intends and will, unless prohibited, without cause or any reason, except his dislike for and prejudice against this petitioner, proceed to vote to sustain the said charges against this petitioner and will vote to remove this petitioner from office, and that such vote of said Scholefield may decide the judgment of the said Board."

The petition declares "that none of the charges and specifications set forth in said 'Exhibit A' (the written charges filed before said board, and made a part of the petition here) are true and this petitioner has a good and sufficient defense to each and every charge therein contained."

It is further made to appear by the petition that, on June 14, 1921, the petitioner filed a petition in the superior court in and for the county of Sacramento for a writ of prohibition to restrain said Scholefield, respondent here, from sitting as a member of said board of supervisors in the proceeding before said board involving an investigation and trial of the charges preferred against the petitioner, as set forth in Exhibit "A" attached to and made a part of the petition here; that a demurrer was interposed to the petition so filed in said superior court upon the ground

that said petition did not state facts sufficient to entitle the petitioner to the relief therein and thereby prayed for and that said demurrer was sustained by said court, and the writ denied. It is alleged that the remedy by appeal from the judgment of the superior court is inadequate, since an appeal therefrom cannot be perfected and the same prosecuted to a finality so as to render it effectual, the time for the hearing of the said charges by said board having been fixed for Monday, July 11, 1921, at 10 o'clock A. M.

Upon the filing of the petition in this court an order to show cause and an order temporarily restraining the respondent from sitting with said board on the trial of the charges against petitioner were issued. Upon the return day respondent appeared by counsel and filed a demurrer to the petition on the general ground and on the further ground that "it appears on the face of the petition of plaintiff and petitioner herein that a final judgment has been entered in the same matter by the Superior Court of the . . . County of Sacramento."

Thus two questions are here presented for decision: 1. Whether the writ herein applied for will lie where the precise question at issue has already been determined against petitioner at *nisi prius* and an appeal from the judgment of the trial court therein is available to the petitioner. 2. Whether, in any event, the respondent, as a member of the board of supervisors, may be restrained by the writ herein prayed for from sitting in the trial by said board of said charges on the ground that he is, as the petition alleges, biased and prejudiced against the petitioner and, therefore, disqualified from sitting in the investigation of the charges because of having been personally active in instituting or causing to be instituted the proceeding for the removal of the petitioner from the position of county engineer.

At the hearing of this proceeding it was stated by counsel for the petitioner that an appeal had been taken from the judgment of the superior court in this matter, but it is claimed by counsel for petitioner that, even if the facts as stated in the petition are not such as to justify the issuance of the peremptory writ for the purpose of prohibiting the respondent from sitting at all in the investigation of

the charges, it is, nevertheless, still the duty of this court in this proceeding upon the facts as disclosed by the petition to order a provisional writ to issue as ancillary to his remedy by appeal,· or, *in other words*, for the purpose of preventing the board from proceeding with the trial of the charges pending the determination of petitioner's appeal and thus preserving the efficacy thereof or the judgment on appeal in case it be favorable to him, it being manifest that the denial *in toto* of the application for the writ will mean that the trial of the charges may proceed, with respondent as one of the triers, before the appeal is determined.

As forecast above, the appeal from the judgment of the superior court of Sacramento County in this matter involves and is limited to precisely the same jurisdictional question that is involved in this proceeding. In other words, the petition here discloses that the petition filed in the superior court was for a writ of prohibition to restrain the respondent, as a member of the board of supervisors, from participating in the trial of the charges preferred before said board against the petitioner and that the same broad question presented therein is submitted here, to wit: Whether the respondent is, by reason of the facts set forth in said petition, disqualified as a member of the board of supervisors from acting as such member in the investigation of the charges filed against the petitioner. This being the question of overruling importance submitted both by the appeal and in this proceeding, and, inasmuch as we have been persuaded to the conclusion that the respondent is not disqualified ·from acting in his official capacity in the hearing of the charges against petitioner, there can be no impropriety in passing upon and determining said question in this proceeding. The conclusion thus announced upon the principal question propounded here will obviously render it unnecessary to notice or consider herein the question of the propriety, under the circumstances of the case as revealed by the petition, of the remedy herein petitioned for. We will, therefore, now proceed with an exposition of the reasons supporting the conclusion at which we have arrived upon the jurisdictional question submitted herein.

The argument advanced in support of the position of petitioner is that the board of supervisors, when engaged in the

prosecution of an investigation of charges of misfeasance, nonfeasance, malfeasance, or other dereliction of duty by an employee or officer of the county appointed by such board, exercises functions which are judicial in their nature, and, therefore, to permit respondent, upon the showing made by the petition that he is personally interested in and likewise solicitous for the removal of the petitioner from the position of county engineer, to sit in judgment upon the latter in the matter of the charges pending before the board of supervisors against the petitioner, would be to impinge upon the just principle that no one should be a judge in his own case; that, at all events, the petition, the allegations of which are admitted to be true by the demurrer interposed thereto, clearly discloses that respondent is biased and prejudiced against the petitioner, or at the least has been personally so active in the preferment and thus far the prosecution of the charges against the petitioner, as to raise the implication of his bias and prejudice against the petitioner; that, therefore, he could not try the charges fairly and impartially, and for this reason he is legally disqualified from participating in the investigation of said charges. The proposition last stated, it will be noted, involves an insistence upon the rigor with which the rules as to the disqualification of judges and juries in the trial of cases in the courts are applied.

[1] While it cannot be doubted that in investigations such as the one concerned herein the board of supervisors in a sense exercises judicial functions, still we are of the opinion, considering the relation, officially, of such board to the county, or its general purpose and scope as a part of the governmental machinery of the county, that, strictly speaking, such investigations are merely administrative, and we are, therefore, firmly of the conviction that the respondent here is not disqualified for either of the reasons suggested by counsel for the petitioner. [2] Moreover, it is clear, from the statute authorizing the appointment of county engineers by the boards of supervisors, that the legislature intended, in a case where the engineer appointed is charged with dereliction of his duties as such, to constitute the board of supervisors itself the sole tribunal by which such charge or charges should be heard and determined.

The statute giving the board of supervisors authority to appoint a county engineer in any of the counties of the state was passed by the legislature of 1919 (Stats. 1919, p. 1290, *supra*), and the first section thereof reads as follows:

"The board of supervisors of any county at their option may appoint, and upon petition therefor signed by qualified electors of the county equaling in number not less than twenty-five per cent of the total vote cast in the county for governor at the last preceding election at which a governor was elected, they must appoint a competent civil engineer who has had within five years last past, not less than one year's actual experience in practical road building as county engineer, who shall be deemed an employee and not a county officer. The county engineer shall, under the general direction and supervision of the board of supervisors and except as otherwise provided in this act, have complete direction and control over all of the construction, improvement, maintenance and repair of county roads, highways and bridges."

The second section reads in part as follows:

"The county engineer shall hold his employment for the term of four years from the date of his appointment; provided that he may be removed at any time by the board of supervisors for inefficiency, neglect of duty, malfeasance or misconduct in office, or other good cause shown, upon written charges to be filed with and heard by the board of supervisors and sustained by a three-fifths vote of said board after a hearing as herein provided. Said board is hereby vested with the power to administer oaths, compel the attendance of witnesses and the production of books, papers and testimony."

From the above provisions of the statute these propositions irresistibly follow: 1. That it was the legislative intent that the county engineer appointed by the board of supervisors should be possessed of the skill as an engineer necessary to enable him to cope with the requirements of modern road construction and that he should, as such engineer, be entirely under the control and subject to the orders of the board. 2. That the legislature intended to and did constitute the board of supervisors the exclusive tribunal by which any charges which might be preferred

against the engineer should be heard and determined. The latter proposition follows from express language contained in the statute, while the former is deducible from the provision that the engineer so appointed "shall be deemed to be an employee and not a county officer," although, it may be here parenthetically added, that whether he is an employee only or a county officer is not material or important to the decision herein, the reference to said provision being made here only for the purpose of disclosing that it was the intent of the legislature that the board of supervisors should be empowered to discharge the engineer, not arbitrarily, of course, but when, for any reason, his services as such proved unsatisfactory, much upon the same principle that a private employer may discharge an employee for inefficiency or deficiency in the qualifications required of his employment.

If, then, we were required to hold with petitioner that, where a member of the board of supervisors has himself filed charges against the engineer or has been personally instrumental in procuring such charges to be filed by some other person, such supervisor would be incompetent to sit with the board in the investigation of the charges so preferred, upon the principle that no one is to be permitted to "act as a judge in his own case," it would be necessary to hold that the provision of the statute constituting the board of supervisors the tribunal by which such charges are to be tried and determined is unconstitutional, since, by reason of the provision that the engineer can be removed only upon a three-fifths vote of the board, the statute clearly contemplates that upon such charges he is entitled to the judgment of the whole membership of the board, and, obviously, if one or two or any number of the members were incompetent, for the reasons suggested, to serve, the tribunal trying him would not be the tribunal as constituted by the legislature. But, as above declared, we are of the opinion that the power vested in the board by the statute to investigate charges preferred against the engineer and to remove him from the position if the charges be by evidence sustained, is perfectly valid and in no manner infringes the constitutional rights of the engineer. Indeed, it is clear that the legislature, *ex industria,* constituted the board of supervisors

the exclusive tribunal for the trial of charges of inefficiency or malfeasance or nonfeasance against the engineer, for the reason that, when appointed, he holds the position under the direct authority of said board, which is responsible to the public for the manner in which he discharges his duties as such engineer. The board is charged with the duty of seeing that he performs his official duties according to the requirements of the county and may or may not accept as satisfactory such work as he may perform in his official capacity. We know of no other legal way than that as outlined or contemplated by the statute authorizing the appointment of a county engineer in which the supervisors may exercise the complete control over that officer or employee, whichever he may be, which the statute has undoubtedly vested in them. It is argued, however, that resort may be had either to section 758 or section 772 of the Penal Code in the case of charges preferred against the engineer, but we think that a comparison of those sections with the statute authorizing the appointment of an engineer will make it entirely clear that if the procedure for the removal of the engineer was limited to that prescribed in either of the code sections named, there still might be a just ground for the amotion of said employee and at the same time no legal way by which such removal could be effected. Section 758 of the Penal Code provides: "An accusation in writing against any district, county, township, or municipal officer, for willful or corrupt misconduct in office, may be presented by the grand jury of the county for or in which the officer accused is elected or appointed."

The provisions following said section provide for the subsequent proceedings to be taken, including the trial by jury and judgment of removal in case of his conviction. Section 772 provides for the removal of any officer within the jurisdiction of the superior court who has been found guilty of charging and collecting illegal fees for services rendered or to be rendered in his office or who has refused or neglected to perform the official duties pertaining to his office. Section 2 of the statute in question, it will be observed, provides that the engineer may be removed at any time by the board of supervisors for *inefficiency,* neglect of duty, malfeasance or misconduct in office, or other good cause shown. It will thus be noted that, while some

of the grounds upon which the engineer might be removed under the statute of 1919 are in effect the same as some of the grounds prescribed in the two sections of the Penal Code for the removal of public officers, yet it sets forth one cause for his removal which is not embraced within the provisions of the said sections of the code, viz.: Inefficiency. It is, hence, to be seen that if the right vested in the board to try and determine charges against the engineer and to remove him from his employment, if the charges be proved, is to be denied upon the ground that it involves a trespass upon the fundamental rights of that employee, then, obviously, if he were inefficient or incompetent as an engineer and no other ground for his removal could be sustained, there would be no power which could remove him until the expiration of his term of employment as such engineer, which, under the statute, is for four years from the date of his employment. And this very ground of distinction between the statute and the code sections referred to clearly gives added support to the proposition heretofore stated, to wit: That it was the legislative intent to make the board of supervisors the sole and exclusive tribunal for the hearing and determination of any charges which might be preferred against the engineer.

[3] Nor are trials of charges against an officer or employee of a municipality or county controlled by or subject to the rules that appertain to judicial tribunals, where the legislature has expressly given the governing body of the municipality or the county the exclusive cognizance or jurisdiction of such trials, and the law creating such body the exclusive tribunal by which such trials should be had makes no provision for disqualifying a member from acting upon the ground that he is biased or prejudiced against the officer or employee on trial. Of course, such an investigation, as has been before stated, is in a sense of a judicial nature and the members of the board acting as the tribunal for the trial of the charges should not permit their bias or prejudice, if any they have, to influence them against the accused official. It is, of course, their duty to determine the question of the guilt or innocence of the accused officer or employee exclusively upon the evidence presented before them and not to allow their minds to be influenced in the slightest degree by any personal feeling that they or any

of them might have against the officer or employee on trial
before them; yet, while this is all true, it is also true,
as before declared, that if any one of them happens to pos-
sess a feeling of prejudice against the accused or has
acted in the preliminaries of the matter in such manner
as to justify the implication that he may be biased or
prejudiced against him in the trial, public policy, as it is
established by the law creating the board the tribunal in
such case, does not permit the member or members having
such bias or prejudice to be precluded from participating
in the trial upon that ground.

These propositions are sustained by the greater weight of
authority, as, indeed, is the conclusion at which we have
arrived upon the proposition first above considered—that
is, that a member of the board who has himself filed
charges or is personally interested in their filing would be
acting as a judge in his own case should he be permitted
to sit in the trial of the charges. In 2 McQuillin on Mu-
nicipal Corporations, section 565, it is said: ''Some authori-
ties hold that a council or other municipal board in pro-
ceedings for removal acts judicially, and, therefore, those
boards whose members prefer the charges are disqualified
from sitting as members of the council or board on hearing
them, since they cannot act both as accusers and judges.
But the contrary view is usually taken. Thus in a pro-
ceeding to remove, members of the council are not dis-
qualified because of the fact that they were members of a
committee to investigate and afterward preferred charges;
the fact that they may have formed an opinion concerning
the accused was regarded as immaterial. . . . On the trial
of the mayor, the fact that one of the councilmen will act
as mayor in event of removal, and the further fact that
another councilman signed the charges, does not prevent
either from sitting as councilmen at the trial. The formali-
ties of a criminal court need not be observed.''

In *People ex rel. Burby* v. *Common Council of City
of Auburn et al.,* 85 Hun, 601, [33 N. Y. Supp. 165], the
relator, as city attorney of the city of Auburn, stipulated
with counsel for the defendant in a case against the city
for damages that he would abide the decision of the su-
preme court on appeal and not take the case to the court
of appeals in the event the decision in the former court was

against the city.   The matter of making this stipulation was investigated by two members of the city council and upon that investigation said members preferred charges, against the city attorney of inefficiency in the management of the case referred to, and on investigation of the charges by the city council the relator was found guilty by a majority vote and removed from office.   He thereupon applied for a writ of *certiorari* to the supreme court for the purpose of securing judgment nullifying the action of the city council removing him from office and assailed the jurisdiction of that body upon the ground, among others, that the two councilmen who preferred the charges against him had taken part in the proceedings for his removal and had voted to sustain the charges.   The same argument was made upon the hearing before the supreme court as is made here against the legal competency of the respondent to sit with the board of supervisors in the investigation of the charges preferred against the petitioner here.   The court in that case said *inter alia:*

"The common council is created by statute, the only tribunal that can take proceedings against the relator for the matter alleged against him.   It is therefore absolutely necessary that this body take this action, or it cannot be taken at all.   Consequently the duty that devolved upon each member of the common council, to take part in the proceeding, was absolute, notwithstanding he may have formed such an opinion or taken such action in the premises as would disqualify him if he were a judge or juror in an action at law.   In *Re Ryers,* 72 N. Y. 1, 11–13, [28 Am. Rep. 88], the county judge of Richmond County had made an order appointing commissioners in a proceeding to drain lands under a statute, and lands in which the judge was interested; he being the only authority, under the statute, that could appoint such commissioners.   The point was made that the judge was disqualified from making the appointment, on account of being an interested party; and the court of appeals, after citing many authorities, reaches the conclusion 'that it must be the law, from these cases, that where the judicial power has been confided to one judge, and if he should fail to act there would be no means of proceeding in the matter, though interested, he may take such cognizance of the case as is absolutely neces-

sary, so far that the party shall not be without remedy.' This we understand to be confined to cases where the judicial officer has not such an interest in the cause or matter that the result must necessarily affect his personal or pecuniary interest; or where his interest is minute, and he has so exclusive a jurisdiction, by constitution or statute, that his refusal to act in the cause or matter will prevent any proceeding in it, then he may act, so far as that there may not be a failure of remedy. This is the rule as to judicial officers. The rule would be more liberal still in this case. The common council, in this proceeding, were, strictly speaking, not a court, nor were its members judges. The proceeding was not a common-law trial, with the incidents and common-law rights pertaining to a trial; nor, strictly speaking, was it a trial before a court. It was an investigation required by the statute to furnish information of the common council, upon which it could act. (*People* v. *Board of Police Commrs.,* 93 N. Y. 102, 103; Id., 98 N. Y. 334, 335; *People* v. *Doolittle,* 44 Hun (N. Y.), 293.) These members of the common council had no pecuniary interest in the result of the proceeding, and were not in any sense parties to it, further than to discharge the duties imposed upon them by law. We must hold that the common council had jurisdiction, and that the authority conferred upon it by the statute in relation to the subject matter has been pursued in the mode required by law in order to authorize them to make the determination.''

In *State ex rel. Starkweather* v. *Common Council of the City of Superior,* 90 Wis. 612, 619, [64 N. W. 304, 306], a proceeding before the city council involving an investigation by said body of charges of official misconduct against the mayor was reviewed and in said case the argument was made that the power conferred upon the city council to investigate charges against the mayor and remove that official from his office in case the charges were sustained was unconstitutional, because it was a grant of judicial power that could not be conferred upon any body of men save courts and justices of the peace. It was further claimed that the ''court'' so constituted was unconstitutional because at least two of the aldermen or councilmen were interested in the result, they having preferred the charges before the common council against the mayor. To these

contentions the supreme court of Wisconsin replied: "There are certainly some decisions lending color to the view that the amotion of an officer of a corporation is purely an exercise of judicial power. (*Dullam* v. *Willson,* 53 Mich. 392, [51 Am. Rep. 128, 19 N. W. 112]; *Tompert* v. *Lithgow,* 1 Bush (Ky.), 176.) The better authority, however, is clearly to the effect that the power to remove officers for cause, though to be exercised in a judicial manner, is administrative, not judicial. It is a part of the power of the corporation which is very useful, in fact almost necessary, for the efficient performance of the corporate duties. . . . The common council, not being a court but merely an administrative body, is not subject to all the rules governing courts in the transaction of business; and thus it undoubtedly is the law that the fact that one of the aldermen will discharge the duties of mayor in case of the removal of the mayor, and that another of the aldermen signed the charges upon which the mayor was tried, does not bar these aldermen from sitting. The legislature has power to designate the officers who shall possess and exercise the power of removal, and it has designated in this case the common council. It created the office, and it may provide for the removal of the officer; and it may undoubtedly provide for such removal by a body, one of whom will be called to exercise the duties of mayor in case of his removal. Nor is there any affidavit of prejudice provided for by the statute. Passion and prejudice frequently play an important part in such proceedings as those before us, but in the absence of constitutional or legislative restrictions they do not disqualify the members of the removing board from acting. *Ita lex scripta est.* (*Andrews* v. *King,* 77 Me. 224.)''

The doctrine of the above authorities is expressly approved by our own supreme court in *Federal Construction Co.* v. *Curd,* 179 Cal. 479, [177 Pac. 473]; Id., 179 Cal. 494, [2 A. L. R. 1202, 177 Pac. 469], in which the subject is elaborately considered and the reasoning thereon squarely in line with that of the cases and the authorities above cited. (See, also, *Grosjean* v. *Board of Education,* 40 Cal. App. 434, 441, [181 Pac. 113]; *Riggins* v. *Richards,* 97 Tex. 229, 237, [77 S. W. 946]; *Barrett* v. *Board of Commrs.,* 85 N. J. L. 134, [88 Atl. 856, 857]; *Rutter* v.

*Burke,* 89 Vt. 14, [93 Atl. 842, 849]; *Tibbs* v. *City of At-
lanta,* 125 Ga. 18, [53 S. E. 811, 812]; *People ex rel. Jones*
v. *Sherman,* 66 App. Div. 231, [72 N. Y. Supp. 718, 720];
*State ex rel. Heimburger* v. *Wells,* 210 Mo. 601, [109
S. W. 758, 761, 762; *State ex rel. Murphy* v. *Burney,* 269
Mo. 602, [191 S. W. 981, 982].)

All the foregoing cases declare that the power to remove
an officer of a municipal corporation for cause is adminis-
trative, not judicial, and may be vested in such a body
as the common council and that the power of removal
is not subject to all the rules governing courts in the trans-
action of business.

The case of *Stockwell* v. *Township Board etc.,* 22 Mich.
341, cited by petitioner, is one of the very few cases which
hold adversely to the principles established by the cases
above named. But we are not impressed with the reason-
ing by which the conclusion in that case was reached and,
as before declared, think the sounder reason is at the bot-
tom of the cases cited by the respondent, above referred to.

It may be added to what has already been said that even
the judges of our courts would not be disqualified from
trying cases in which they had some bias or feeling for or
against one of the litigants, except for any pecuniary in-
terest they might have in the litigation, were it not for the
statutory provisions disqualifying them under certain cir-
cumstances and conditions.

We may also add that neither in the present case nor,
indeed, in any case where the sole power of the trial of an
officer upon charges which, if proven true, would result
in his removal from office, is vested in the governing body
of a city or county, is it to be assumed that any member of
said body who is big enough, broad enough, intelligent
enough, and honest enough to be elevated to so important
a local public office would not be able in the trial of the
officer to cast entirely aside any personal bias or prejudice
he might have against such officer and so try him and
determine the question of his guilt or innocence of the
charges preferred wholly upon the competent evidence ad-
duced before him. Indeed, we doubt not that the respond-
ent in this case, even if it be true that he has entertained
such a feeling of prejudice against the petitioner as ap-
pears to be shown by the petitition, will try the petitioner

upon the charges pending against the latter in the same fair and impartial manner as he himself would desire and, indeed, be entitled to be tried were he placed in petitioner's position.

However, for the reasons herein stated, the demurrer to the petition herein is sustained and the application for a writ of prohibition, either peremptory or as auxiliary to petitioner's appeal, is denied.

Burnett, J., and Finch, P. J., concurred.