EDWARD CHRISTAL et al., Appellants, v. THE POLICE COMMISSION OF THE CITY AND COUNTY OF SAN FRANCISCO et al., Respondents.

J. Joseph Sullivan and John Francis O'Dea for Appellants.

John J. O'Toole, City Attorney, and Walter A. Dold, Chief City Attorney, for Respondents.

SPENCE, J.—Appellants were formerly police officers in the City and County of San Francisco. Said appellants and other former police officers filed a petition in the superior court for a writ of review and a writ of mandate. They sought thereby to obtain the annulment of the action of the Police Commission of said City and County in dismissing said officers and to compel said Commission to reinstate them in their former positions. The writ of review was issued, a return was made, and an answer was filed. No evidence was introduced in the proceedings in the trial court, and the cause was submitted upon the records of the

Police Commission as contained in the return. The trial court entered its judgment affirming the action of the Police Commission in dismissing said officers and denying the petition for a writ of mandate. Appellants, being four of the eleven original petitioners, have appealed from said judgment of the trial court.

This controversy is the aftermath of a certain grand jury investigation conducted in San Francisco in 1936. In their petition in the trial court, petitioners alleged that the purpose of said investigation was to ascertain "whether petitioners or any of them as members of said police department or otherwise had committed or now are committing any felony or other crime, and particularly whether petitioners or any of them had been or now are guilty of corruption or had received or now are receiving bribes or gratuities from any persons engaged in or connected with gambling, prostitution and other unlawful activities . . . and said grand jury . . . was further investigating the assets and income of each petitioner to determine whether the same was obtained by reason of the commission of any felony or other crime by each petitioner and particularly whether said assets and income were derived by each petitioner as the result or fruits of felonious or other criminal bribery, corruption, conspiracy to extort or receive from unlawful sources or from persons engaged in unlawful activities, particularly gambling and prostitution".

It was further alleged that petitioners were subpoenaed to appear before said grand jury on various dates during said investigation and that, "Each of your petitioners did refuse to produce his said private records before said grand jury and did refuse to answer questions before said grand jury concerning his assets and income and did refuse to testify concerning his acts and conduct when inquiry was made concerning the same for the purpose of discovering whether each petitioner had committed or was guilty of any of the acts or things, the discovery of which was the object of said grand jury investigation as aforesaid".

Thereafter charges were filed against said petitioners before the Police Commission. In each case the heading of the charges shows that the petitioner was charged with "Conduct unbecoming an Officer and Disobedience of Orders". The specific facts alleged in each case involved the refusal of the officer to testify as above set forth. The hearings

were had before the police commissioners, and the officers were dismissed.

Several incidental points are raised by appellants on this appeal, but the main question involved is whether appellants, while holding positions as police officers, could exercise the constitutional privilege of refusing to testify before the grand jury under the circumstances and still insist upon retaining their positions as police officers. We are of the opinion that they could not, and we have reached this conclusion without resort to a consideration of the violation of the specific rule of the police department adopted in May, 1936, which rule will be hereinafter discussed.

The nature of the constitutional privilege to which reference has been made was discussed in two recent decisions of this court involving two of the officers who were petitioners in these proceedings in the trial court. (*In re Lemon,* 15 Cal. App. (2d) 82 [59 Pac. (2d) 213] ; *In re Hoertkorn,* 15 Cal. App. (2d) 93 [59 Pac. (2d) 218].) We need not further discuss the nature of said privilege here as it is conceded by all that said officers could exercise that privilege in any proceeding. We are concerned here only with the result of the exercise of such privilege, by those holding the positions of police officers, in an investigation by which it was sought to determine whether such officers had been guilty of criminal activities in connection with their duties as police officers.

The duties of police officers are many and varied. (21 Cal. Jur. 400 et seq.) Such officers are the guardians of the peace and security of the community, and the efficiency of our whole system, designed for the purpose of maintaining law and order, depends upon the extent to which such officers perform their duties and are faithful to the trust reposed in them. Among the duties of police officers are those of preventing the commission of crime, of assisting in its detection, and of disclosing all information known to them which may lead to the apprehension and punishment of those who have transgressed our laws. When police officers acquire knowledge of facts which will tend to incriminate any person, it is their duty to disclose such facts to their superiors and to testify freely concerning such facts when called upon to do so before any duly constituted court or grand jury. It is for the performance of these duties that police officers are commissioned and paid by the community,

and it is a violation of said duties for any police officer to refuse to disclose pertinent facts within his knowledge even though such disclosure may show, or tend to show, that he himself has engaged in criminal activities.

We are not unmindful of the constitutional privilege above mentioned which may be exercised by all persons, including police officers, in any proceeding, civil or criminal. (*In re Lemon, supra; In re Hoertkorn, supra.*) As we view the situation, when pertinent questions were propounded to appellants before the grand jury, the answers to which questions would tend to incriminate them, they were put to a choice which they voluntarily made. Duty required them to answer. Privilege permitted them to refuse to answer. They chose to exercise the privilege, but the exercise of such privilege was wholly inconsistent with their duty as police officers. They claim that they had a constitutional right to refuse to answer under the circumstances, but it is certain that they had no constitutional right to remain police officers in the face of their clear violation of the duty imposed upon them. (*McAuliffe* v. *Mayor of New Bedford*, 155 Mass. 216 [29 N. E. 517].) We are of the opinion that such a violation of duty would constitute cause for dismissal even in the absence of any specific rule requiring such officers to give testimony before the grand jury, or of any specific rule relating to "conduct unbecoming an officer". That such conduct constituted "conduct unbecoming an officer", there can be no doubt.

A somewhat similar state of facts was involved in *Souder* v. *City of Philadelphia*, 305 Pa. 1 [156 Atl. 245, 77 A. L. R. 610]. The court there said on pages 246 and 247: "Souder was a captain of police, whose duty it was, not only to guard and protect the citizens of the municipality which had honored him with its confidence by appointing him to the high position of trust and civic responsibility which he filled and to run down and bring to justice malefactors within its limits, but also, as an officer in high command of its police, to preserve and enforce discipline among those over whom he had been placed in a position of authority. It was essential in the proper discharge of his duties that he should comport himself as an officer in such manner that no act of wrongdoing should attach itself to him, to the end that those who served under him should feel for him that respect which insures confidence and obedience. As such

an officer in such a station he should have been keen to see that no taint of evil doing attached itself to him, and when charges were made, reflecting upon his honesty and integrity, that they were met with denial and answering proofs of no delinquencies. He should have held himself above suspicion. Instead of so doing, when charges of the gravest nature were brought against him by the grand inquest of the county, he answered before them in a way not to establish his freedom from wrong by full explanation, but in a manner calculated to confirm his complicity in crime, and, when summoned by his superior on specific charges before the tribunal charged by the law with the duty of inquiring into them, he answered not at all. This in itself was conduct unbecoming an officer.'' ·

There is nothing startling in the conception that a public servant's right to retain his office or employment should depend upon his willingness to forego his constitutional rights and privileges to the extent that the exercise of such rights and privileges may be inconsistent with the performance of the duties of his office or employment. One of the most cherished rights guaranteed by the Constitution is that of freedom of speech, yet no one would maintain that a police officer could fully exercise that right without violating the duties imposed upon him by the acceptance of his employment as a police officer. The right of freedom of speech might be relied upon by a police officer who had disclosed, to persons conducting an illegal establishment, information concerning the plan of the police department to conduct a raid upon such establishment, but the furnishing of such information would be inconsistent with and violative of the duties of such police officer. Such conduct would constitute cause for dismissal with or without any specific rule on the particular subject, and in the event of the adoption of a rule providing for dismissal of any officer making such disclosure, the claim that such rule violated any constitutional right of the officers would be clearly untenable.

Turning now to the specific contentions of appellants, other than the main question above discussed, it is contended first that the trial court erred in upholding the dismissals as the Police Commission was without jurisdiction. We find no merit in the contention, and will discuss appellants' several arguments on this point in the order in which we find them discussed in appellants' brief.

■ The first argument is found under the heading ''complaints not verified''. Appellants cite section 155 of the Charter of the City and County of San Francisco which provides that ''Members of either department shall not be subject to dismissal . . . except for cause, nor until after a fair and impartial trial before the commissioners of their respective departments, upon a verified complaint filed before such commission setting forth specifically the acts complained of. . . . '' We may assume, without deciding, that a proper verification was a jurisdictional requirement, although the court in *Donovan* v. *Board of Police Commrs.*, 32 Cal. App. 392 [163 Pac. 69], cited by appellants, held that even if the verification was defective, such defect was one which could be and was waived by the officer against whom the proceedings were directed. We nevertheless find no merit in the claim that the complaints were not verified. The only complaint to which appellants' argument can possibly be directed is the complaint against appellant Mignola. All other complaints were duly verified before a deputy county clerk. The Mignola complaint was verified before the chief of police, but appellants argue that the chief of police had no authority for that purpose. Section 1028 of the Political Code provides that ''Every executive and judicial officer may administer and certify oaths.'' Section 343 of the same code provides that ''The number and designation of the civil executive officers are as follows: . . . such other officers as fill offices created by or under the authority of general laws for the government of counties, cities, and towns, or of the charters or special laws affecting the same.'' Section 4 of the Charter of the City and County of San Francisco provides that the officers of said City and County shall be '' . . . the executive appointed by each board or commission as the chief executive officer under such board or commission . . . ''. The chief of police, before whom the Mignola complaint was verified, was the chief executive officer appointed by the Police Commission. We therefore conclude that the Mignola complaint and all other complaints involved herein were duly verified before officers authorized for that purpose. (See discussion in *Haile* v. *Smith*, 128 Cal. 415 [60 Pac. 1032].)

■ The second argument of appellants is that ''the jurisdictional requirement of a fair and impartial trial was denied them''. This refers to the trial before the Police Com-

mission. It is based upon the fact that appellants sought to disqualify Commissioner Theodore J. Roche because of alleged bias and prejudice on his part and that said commissioner nevertheless participated in the trials. Appellants filed affidavits consisting largely of excerpts from newspaper articles which purported to quote certain statements made by Mr. Roche prior to the hearing before the Police Commission. We need not discuss the question of whether a person charged before an administrative board may successfully urge the disqualification of one or more of the members of such board on the ground of bias or prejudice. (See *Dyment* v. *Board of Medical Examiners,* 93 Cal. App. 65 [268 Pac. 1073] ; *Butler* v. *Scholefield,* 54 Cal. App. 217 [201 Pac. 625] ; *Winning* v. *Board of Dental Examiners,* 114 Cal. App. 658 [300 Pac. 866] ; *Rinaldo* v. *Board of Medical Examiners,* 135 Cal. App. 613 [27 Pac. (2d) 671].) Suffice it to state that we find nothing in the record sufficient to show bias or prejudice on the part of Mr. Roche. The substance of the allegations and excerpts from the newspaper articles contained in the affidavits may be summarized as follows: That Mr. Roche had publicly announced that the failure of any officer to testify frankly before the grand jury would be considered "unofficerlike conduct"; that he had been active in amending the rules of the police department during the grand jury investigation to require specifically that all officers should testify without reservation as to all matters under investigation; that he had made statements showing that the Police Commission intended to enforce said rule strictly and to take disciplinary action against all who might assert their constitutional privilege by refusing to testify before this grand jury. Accepting the allegations and excerpts from newspaper articles as truly stating the attitude and statements of Mr. Roche, they showed only that Mr. Roche, and perhaps his fellow commissioners, had concluded that the refusal of any officer to testify before the grand jury would constitute conduct unbecoming an officer; that he had also determined that a specific rule requiring police officers to so testify should be enacted; and that he had issued a statement indicating that disciplinary action would be taken against any officer refusing to so testify. The soundness of the conclusion above mentioned cannot be challenged, and the enactment of the rule and the issuance of the warning tended to show the fairness of Mr. Roche and

his fellow commissioners in advising all police officers in advance of that conclusion rather than to show any bias or prejudice on the part of any of said commissioners.

The third argument is that the "commission lacked power to dismiss". In this portion of the argument, appellants claim that a certain amendment to section 19 of rule 46 of the police department was invalid. Said amendment was adopted to require specifically that members of the department should testify without reservation in any investigation conducted before the grand jury as well as in all cases before the courts. Said amendment was first adopted at a special meeting held on May 12, 1936, and was later readopted at a regular meeting held on May 18, 1936. We find no merit in the claim of invalidity made by appellants, but we do not believe it necessary to extend the discussion on this phase of appellants' argument. In the absence of any specific rule of the department, we are of the opinion that appellants were guilty of a clear violation of their duties as officers in refusing to testify before the grand jury, and that such violation constituted cause for dismissal as contemplated by section 155 of the charter. Furthermore, each appellant was charged with conduct unbecoming an officer within the meaning of rule 4 of the police department as well as with a violation of section 19 of rule 46. Both specifications contained in the complaints were based upon the refusal to testify before the grand jury, and there can be no doubt that such refusal constituted conduct unbecoming an officer and cause for dismissal.

The fourth argument is that "appellants were not before grand jury". This argument appears to be based upon the claim that appellants had not been legally subpoenaed and that they attempted to make a special appearance before the grand jury "for the purpose of challenging the validity of the process". Appellants do not point to any defect in the subpoenas or the service thereof, but assuming that there was some invalidity, appellants were actually before the grand jury and their duty as police officers required them to give their testimony regardless of any such alleged invalidity.

The final contention of appellants is that section 19 of rule 46 is unconstitutional. We believe that this contention is answered in a large measure by the foregoing discussion. The rule was but a definite expression of one of

the general duties imposed upon all police officers. The adoption of the rule and the amendment above mentioned did not impose any new duties upon the members of the department, and the adoption thereof did not operate to deprive any member of the department of the right to exercise his constitutional privilege. That privilege still existed and was exercised by appellants. The rule is not, therefore, subject to attack upon constitutional grounds. What appellants have attempted to do is to claim an alleged right to continue as police officers despite a violation of their duties as such officers. It seems clear that they had no such right. (*McAuliffe* v. *Mayor, supra.*)

Appellants have discussed numerous authorities from other jurisdictions, all of which appear to be distinguishable on their facts. If any of said authorities may be said to indicate views at variance with the views hereinabove expressed, we believe that the reasoning found in *Souder* v. *City of Philadelphia, supra,* should be followed.

We conclude that the Police Commission had jurisdiction and acted within the powers conferred upon it. We further conclude that appellants were not entitled to have the action of the Police Commission annulled or to have a writ of mandate issued to compel their reinstatement.

The judgment is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 28, 1939.