[Civ. No. 62494. Second Dist., Div. One. Mar. 31, 1982.]

LEWIS R. TITUS, JR., Plaintiff and Appellant, v.
CIVIL SERVICE COMMISSION OF LOS ANGELES COUNTY,
Defendant and Respondent.

COUNSEL

Marcus Daniel Merchasin for Plaintiff and Appellant.

John H. Larson, County Counsel, William F. Stewart and Joe Ben Hudgens, Deputy County Counsel, for Defendant and Respondent.

OPINION

**SPENCER, P. J. —**

### INTRODUCTION

Appellant Lewis R. Titus, Jr. appeals from a judgment denying his petition for a peremptory writ of mandate to compel respondent Los Angeles County Civil Service Commission to order the reinstatement of appellant to his position of lieutenant in the sheriff's department.

### STATEMENT OF FACTS[1]

Appellant had been employed as a peace officer in the sheriff's department since November 6, 1963. He completed law school in 1973 and became a member of the state bar. Thereafter, he was assigned to the legal section of the sheriff's department.

In 1975, the sheriff's department became aware that appellant was engaged in the practice of law on behalf of private clients, whereupon appellant was informed that his private practice was, at the time, prohibited by Government Code section 24004[2] and ordered to cease; he agreed to do so. Thereafter, he formally applied for permission to engage in the private practice of law while off duty; permission was denied. Notwithstanding at least three further orders to cease the private practice of law, appellant continued to pursue his law practice. On May 27, 1976, appellant represented a client in a criminal prosecution.

---

[1]Each party submitted a brief replete with facts gleaned from the reporter's transcript of the administrative hearing. The administrative hearing transcript is not designated as part of the record on appeal. However, the essential facts do appear in the record on appeal as stipulations or exhibits.

[2]Government Code sections 24004 and 24004.5 were amended by Statutes 1978, chapter 17, sections 1 and 2 to permit the private practice of law under limited circumstances which would not conflict foreseeably with the duties of a deputy sheriff.

On June 19, 1976, an individual seeking legal advice contacted appellant in his capacity as an attorney. The individual communicated information regarding the possession of dynamite. Appellant subsequently placed a series of anonymous telephone calls to the Monrovia Police Department and imparted the information he had received with respect to the dynamite. These communications resulted in the confiscation of eight sticks of dynamite and one electrical blasting cap, which items were in a shunted condition. The telephone calls were traced to appellant and on June 21, 1976, he was interviewed by sheriff's department investigators. He declined to provide information as to the identity or location of the individual who had contacted him regarding the dynamite, invoking the attorney-client privilege.

On August 20, 1976, appellant received written notice of the sheriff's intent to suspend and discharge him from employment. He was provided the opportunity to respond orally or in writing within 10 days and to review the material on which the proposed disciplinary action was based.

Appellant elected to respond orally, after which he was given the option of appearing that day before Deputy Chief Sheriff John Knox, who was departing on vacation, or before Inspector Al Hanson at a later date. Appellant chose to appear before Chief Knox, and arrived armed with documents in support of the propriety of his private law practice. Chief Knox, however, perceived the issue as appellant's refusal or inability to cooperate in a criminal investigation. After the interview, Chief Knox recommended that appellant be suspended and discharged. The recommendation was reviewed by a panel consisting of the undersheriff and two assistant sheriffs, and thence adopted. As a result, appellant was suspended from his position on September 8, 1976, and discharged effective October 7, 1976.

Respondent commission sustained appellant's suspension and discharge on July 13, 1977. Subsequently, the superior court ordered respondent's decision set aside due to the improper participation of Commissioner Frank A. Work as hearing officer. Thereafter, another hearing officer was substituted and the matter was reheard. Respondent commission adopted the hearing officer's recommendation and sustained appellant's suspension and discharge; Mr. Work did not participate in the decision.

CONTENTIONS

I

Appellant contends that he was denied procedural due process in that he was not afforded the opportunity to respond, prior to the imposition of discipline, to an individual of sufficient rank in the sheriff's department.

II

Appellant asserts that he was further denied due process of law in that respondent commission met in unlawful secrecy and acted with the improper participation of Mr. Work in sustaining the penalty imposed.

III

Finally, appellant avers that no legally sufficient nexus appears between his conduct and his fitness to perform as a peace officer; hence, imposition of the penalty of discharge was an abuse of discretion.

DISCUSSION

I

█ Appellant's contention that he was denied procedural due process in that he was not afforded the opportunity to respond to an individual of sufficient rank in the sheriff's department lacks merit.

█ Minimal standards of due process require that a public employee receive, prior to imposition of discipline: (1) Notice of the action proposed, (2) the grounds for discipline, (3) the charges and materials upon which the action is based, and (4) the opportunity to respond in opposition to the proposed action. (*Williams* v. *County of Los Angeles* (1978) 22 Cal.3d 731, 736 [150 Cal.Rptr. 475, 586 P.2d 956]; *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194, 215 [124 Cal.Rptr. 14, 539 P.2d 774].) To be meaningful, the right to respond must afford the employee an opportunity to present his side of the controversy before a reasonably impartial and noninvolved reviewer who possesses the authority to recommend a final disposition of the matter. (*Coleman* v. *Regents of University of California* (1979) 93 Cal.App.3d 521, 526

[155 Cal.Rptr. 589].) It is this element of due process alone which appellant claims to have been denied.

The record discloses that Chief Knox possessed the authority to recommend the ultimate disposition of the charges against appellant, subject only to review by a panel consisting of the undersheriff and two assistant sheriffs. Beyond question, Chief Knox was far enough removed from the criminal investigation at issue and the general supervision of appellant's duties to qualify as a reasonably impartial and noninvolved reviewer. Appellant was permitted to present his side of the controversy. Due process requires nothing more.

## II

 There is no greater merit to appellant's assertion that he was further denied due process of law in that respondent commission met in unlawful secrecy and acted with the improper participation of Mr. Work in sustaining the penalty imposed. First, appellant's characterization of respondent commission's closed meeting as unlawfully secret is contrary to law. A public agency may consider the dismissal of a public employee in a closed meeting. (Gov. Code, § 54957; see, e.g., *Lucas v. Board of Trustees* (1971) 18 Cal.App.3d 988, 991 [96 Cal.Rptr. 431].)

Second, there is not a scintilla of evidence that Mr. Work participated in the decision to sustain appellant's discharge. To the contrary, the only evidence presented established that Mr. Work participated neither in the discussion of the matter nor in the decision made. Mr. Work was the president of respondent commission; rule 3.02, Los Angeles County Civil Service Commission Rules, provides: "The President shall preside at all meetings of the Commission and act as spokesman for the Commission." In the absence of evidence to the contrary, it is presumed that a public official has performed his duty in a regular manner. (Evid. Code, § 664.) There being no evidence of impropriety, we conclude that appellant was afforded all process that was due.

## III

 Finally, appellant avers that no legally sufficient nexus appears between his conduct and his ability to perform as a peace officer; hence, imposition of the penalty of discharge was an abuse of discretion. We cannot agree.

It is well established that culpable employee conduct must be of a nature which may easily result in an impairment or disruption of public service. (*Warren* v. *State Personnel Bd.* (1979) 94 Cal.App.3d 95, 104 [156 Cal.Rptr. 351]; see also *Morrison* v. *State Board of Education* (1969) 1 Cal.3d 214, 220-221 [82 Cal.Rptr. 175, 461 P.2d 375].) However, in some factual contexts, the obvious nature of the relationship between conduct and fitness is clear. (*Vielehr* v. *State Personnel Bd.* (1973) 32 Cal.App.3d 187, 194 [107 Cal.Rptr. 852].) The instant matter arises in such a context.

*Christal* v. *Police Commission* (1939) 33 Cal.App.2d 564 [92 P.2d 416] enunciated the role of a law enforcement officer: "Such officers are the guardians of the peace and security of the community, and the efficiency of our whole system, designed for the purpose of maintaining law and order, depends upon the extent to which such officers perform their duties and are faithful to the trust reposed in them. █ Among the duties of police officers are those of preventing the commission of crime, of assisting in its detection, and of disclosing all information known to them which may lead to the apprehension and punishment of those who have transgressed our laws. When police officers acquire knowledge of facts which will tend to incriminate any person, it is their duty to disclose such facts ... when called upon to do so .... It is for the performance of these duties that police officers are commissioned and paid by the community, and it is a violation of said duties for any police officer to refuse to disclose pertinent facts within his knowledge ...." (*Id.*, at pp. 567-568.)

█ We are not unmindful of the stringent nature of the attorney-client privilege. We may safely assume that appellant found himself between Scylla and Charybdis—faced with the mandatory invocation of the privilege in order to serve his loyalty to his client and his conflicting duty as a law enforcement officer—but society does not engage its peace officers on the basis of divided loyalties. Appellant voluntarily chose to engage in the private practice of law, including the representation of clients in criminal matters, thereby creating the potential for divided loyalties. At some point, he was required to select the higher loyalty. It would have been wiser had he done so when he was ordered, and agreed, to terminate the private practice of law; that is, many months prior to exposing himself to information necessary to a criminal investigation.

We do not concern ourselves with the legality of appellant's private law practice or the constitutionality of restrictions on the practice of law by deputy sheriffs, for the fact remains that appellant was not free to breach his duties as a law enforcement officer and retain his employment. (Cf. *Hingsbergen v. State Personnel Bd.* (1966) 240 Cal.App.2d 914 [50 Cal.Rptr. 59]; *Steinmetz v. Cal. State Board. of Education* (1955) 44 Cal.2d 816 [285 P.2d 617]; *Christal v. Police Commission, supra*, 33 Cal.App.2d 564.) Appellant's refusal to divulge the identity and location of his client directly impeded the natural progress of a criminal investigation; little else could have been so inimical to the public service. Having selected the loyalties attendant upon the private practice of law over fidelity to the trust reposed in him as a law enforcement officer, appellant will not now be heard to complain of the inevitable result.

The judgment is affirmed.

Hanson (Thaxton), J., and Dalsimer, J., concurred.