[No. B187388. Second Dist., Div. Two. Mar. 1, 2007.]

KENNETH FLIPPIN, Plaintiff and Appellant, v.
LOS ANGELES CITY BOARD OF CIVIL SERVICE COMMISSIONERS,
Defendant and Respondent;
LOS ANGELES CITY DEPARTMENT OF WATER AND POWER, Real
Party in Interest and Appellant.

## Counsel

Posner & Rosen, Michael Posner and Jason C. Marsili for Plaintiff and Appellant.

Rockard J. Delgadillo, City Attorney, Wendy K. Genz, Deputy City Attorney, and Richard M. Brown for Real Party in Interest and Appellant.

No appearance for Defendant and Respondent.

## Opinion

**CHAVEZ, J.**—Appellant and cross-respondent Los Angeles Department of Water and Power (the DWP) discharged petitioner, respondent, and cross-appellant Kenneth Flippin (respondent) from his employment as a truck driver after he was found sleeping in a hammock beneath a DWP truck on a public street during work hours. Respondent appealed the DWP's decision, and a majority of the Los Angeles City Board of Civil Service Commissioners (the Board), sustained the penalty after sustaining the DWP's charges that respondent was sleeping while on duty in public view, was insubordinate to his superiors when confronted about the misconduct, and had engaged in misconduct seriously reflecting on the City of Los Angeles and its employees. The Board unanimously concluded that before discharging respondent, the DWP had satisfied the due process requirements imposed by *Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774] (*Skelly*).

Respondent petitioned for administrative mandamus to compel the Board to reinstate his employment, claiming that the DWP denied him his due process right to an impartial *Skelly* hearing officer; that there was insufficient evidence to support the DWP's charges against him; and that the penalty of discharge was unwarranted. The trial court sustained the Board's determination that respondent waived his right to a *Skelly* hearing and that no *Skelly* violation occurred, and sustained the Board's findings concerning the charges of misconduct against respondent. The trial court concluded that the penalty imposed for respondent's offenses was excessive, and ordered the Board to

set aside the portion of its decision sustaining respondent's discharge and to reconvene for a reconsideration of the penalty. The DWP appealed the trial court's decision. Respondent cross-appealed the trial court's determination that no *Skelly* violation occurred.

 Substantial evidence supports the trial court's determination that respondent waived his right to a *Skelly* hearing, and we affirm that ruling. Moreover, under the circumstances presented here, respondent was not denied his due process right to an impartial *Skelly* hearing officer. The trial court erred, however, in setting aside the penalty of discharge imposed by the Board. We therefore reverse the judgment.

## BACKGROUND

A. *Factual Background*

At approximately 8:00 a.m. on April 11, 2003, Mike McGeachy, a DWP dispatcher, received a telephone call from a customer complaining that a DWP employee was sleeping in a hammock under a DWP truck parked near the intersection of Van Ness Avenue and 83d Street in the City of Los Angeles. The citizen, who did not want to provide his name, identified respondent's truck by its equipment numbers, expressed his disapproval of respondent's behavior, and demanded that something be done about it. Mr. McGeachy looked up the equipment numbers and transferred the telephone call to Gary King, a DWP dispatcher. After speaking to the disgruntled customer, Mr. King called his superior, who instructed him to accompany a supervisor to the jobsite, take photographs, and resolve the matter.

Mr. King contacted respondent's supervisor, Steven Thompson, and the two men drove to the intersection of 83d and Van Ness. When they arrived, they found a DWP truck parked on Van Ness Avenue, and respondent reclining on a hammock suspended beneath the truck. Respondent was sleeping soundly with his eyes closed, and Mr. King could hear respondent snoring. Both Mr. King and Mr. Thompson took photographs of respondent asleep in the hammock, and then Mr. King yelled out respondent's name in order to wake him up. Respondent woke up and gestured at the two men by raising his middle finger. Mr. King told respondent that his behavior was unacceptable and directed him to remove the hammock from his truck. Later that afternoon, Mr. King and Mr. Thompson encountered respondent at the DWP yard. Respondent had stored the hammock in a plastic container affixed to respondent's truck but had not removed it from the truck. Mr. King once

more directed respondent to remove it. Respondent replied, "You should rattle." When Mr. King asked respondent what he meant, respondent said, "You're a snake."

A DWP manager named John Sharp investigated the April 11, 2003 incident involving respondent. As part of that investigation, Mr. Sharp reviewed respondent's personnel records, which showed that respondent had been employed by the DWP for approximately 16 years and had two prior disciplinary actions: a 20-day suspension in August 1990 for leaving an assigned work location without proper approval, requiring excess supervision, and failing to cooperate with management; and a five-day suspension in November 1989 for threatening another employee, requiring excessive supervision, and leaving an assigned work location without proper approval. Included in respondent's personnel file were three letters of commendation, dated January 1997, February 1999, and November 1999, for courteous and exemplary performance of his duties. Mr. Sharp also reviewed the DWP's administrative manual, which contains guidelines for employee discipline and lists a range of suggested penalties for certain offenses. Discharge is within the range of suggested penalties for a first offense of any of the following types of misconduct: insubordination, sleeping on the job, and misconduct seriously reflecting on city employees or employment. Based on his investigation, Mr. Sharp recommended terminating respondent's employment. DWP assistant general manager Thomas Hokinson approved the recommended discipline.

By a memorandum from Mr. Sharp dated July 3, 2003, respondent received written notice of his proposed dismissal, based on charges of insubordination, requiring excessive supervision, sleeping on the job, and misconduct seriously reflecting on city employees or employment. The memorandum stated that respondent could respond to the proposed discipline by presenting to Mr. Sharp any facts respondent wished to have considered, and that he had until July 14, 2003, to do so.

Some time before July 14, 2003, respondent's union representative met with Mr. Sharp and another DWP manager named Thomas Anderbery to discuss respondent's proposed discharge. Respondent did not participate in that meeting, but sat in an adjacent conference room. At the meeting, the union representative offered no mitigating information on respondent's behalf, but presented an offer by respondent to retire rather than have his employment terminated. Mr. Sharp accepted respondent's offer, and respondent signed a letter of agreement stating his intention to resign in lieu of termination.

Respondent later rescinded his offer to retire, claiming it had been based on erroneous information from the union representative. According to respondent, the union representative had urged respondent to retire instead of challenging the proposed discharge because he risked losing his retirement benefits if the challenge was unsuccessful. Respondent withdrew his application for retirement when he learned that his retirement benefits were vested. Respondent's employment was terminated on August 25, 2003, and he exercised his right to an administrative appeal.

## B. *Administrative Proceedings*

An administrative hearing commenced on October 23, 2003, before a hearing examiner appointed by the Board. On that date, respondent's counsel stipulated that the DWP had complied with the requirements of *Skelly, supra*, 15 Cal.3d 194. Subsequently, on January 7, 2004, respondent's counsel claimed that the DWP had violated the due process requirements of *Skelly* by allowing John Sharp to act as the *Skelly* hearing officer. Respondent's counsel argued that Mr. Sharp could not properly serve as a neutral *Skelly* hearing officer because he had investigated respondent's alleged misconduct and had recommended terminating respondent's employment.

Gary King and Steven Thompson testified at the hearing that they responded to a DWP customer's complaint about a driver sleeping at a jobsite and found respondent asleep in a hammock beneath a DWP truck parked on a public street. Mr. King and Mr. Thompson further testified that respondent pointed his middle finger at them when awakened, and called Mr. King a snake when Mr. King directed him to remove the hammock from the truck.

John Sharp testified that he investigated the charges against respondent and recommended respondent's discharge. Mr. Sharp stated that he served as the hearing officer at respondent's *Skelly* hearing and met with respondent's union representative in July 2003. At that meeting, the union representative offered no mitigating information in response to the charges against respondent, but presented an offer by respondent to retire in lieu of discharge.

Respondent denied sleeping in the hammock on April 11, 2003, and claimed that he was simply resting. He testified that he had used the hammock on his truck for four or five years and had never been told that it was impermissible to do so. Respondent and another DWP driver named Anthony McClelland also testified that DWP truck drivers often arrive at a jobsite before the rest of the work crew, and have to wait for the arrival of the

rest of the crew. While waiting for a crew to arrive at a jobsite, truck drivers are permitted to lie down on the grass and wait, to rest on lounge chairs and read, and to sleep in their cabs. Respondent said that his union representative persuaded him to retire rather than challenge the charges of misconduct against him because he risked losing his retirement benefits if the challenge proved unsuccessful. Respondent withdrew his retirement application when he learned that his retirement benefits were vested.

After the hearing concluded, the hearing examiner issued written findings of fact and recommendations. The hearing examiner determined that the DWP had complied with the requirements of *Skelly, supra*, 15 Cal.3d 194, and that the DWP had met its burden of establishing that respondent was sleeping while on duty in public view, that this misconduct reflected poorly on the city and its employees, and that respondent was insubordinate when he pointed his middle finger in the air at his superiors and called Mr. King a snake. The hearing examiner concluded that the DWP had not met its burden of proving that respondent was insubordinate by failing to remove the hammock from his encounter with Mr. King at the DWP yard later that afternoon, or that respondent required excessive supervision in the performance of his duties. The hearing examiner found as mitigating factors in respondent's favor his 16-year employment history and the three letters of commendation he received for exemplary performance of his duties. Based on these factors, the hearing examiner found the penalty imposed by the DWP to be excessive, and recommended a lengthy suspension in lieu of discharge.

Both respondent and the DWP filed exceptions to the hearing examiner's report, and the matter came before the Board for its consideration on May 27, 2004. After hearing argument from the parties, the Board unanimously concluded that the requirements of *Skelly, supra*, 15 Cal.3d 194, had been met. The Board sustained the allegations that respondent was sleeping while on duty in public view and had been insubordinate when he made a finger gesture toward his superiors and commented that Mr. King was snake, but did not sustain the allegations that respondent had been insubordinate by failing to remove the hammock and container from his truck and that he required excessive supervision. A majority of the Board sustained respondent's discharge.

C. *Mandamus Proceeding*

Respondent requested that the Board reinstate his employment, and when that request was denied, he petitioned for administrative mandamus to compel his reinstatement. After the September 27, 2005 hearing on respondent's petition, the trial court concluded that the weight of the evidence supported

the findings that no *Skelly* violation had occurred and that respondent had waived his right to a *Skelly* hearing. The trial court further concluded that the weight of the evidence supported the charges against respondent of sleeping on the job, insubordination, and misconduct seriously reflecting on the city and its employees. The court nevertheless found that the penalty imposed by the Board was excessive, and issued a peremptory writ of mandamus compelling the Board "to reconsider its determination of discipline in a measure less than discharge, consistent with the Court's Statement of Decision." This appeal and cross-appeal followed.

## DISCUSSION

### I. *Standard of Review*

The applicable standard of review in a mandamus proceeding depends on the right at issue. When a fundamental vested right is involved, such as the right of a city employee to continued employment (*McMillen v. Civil Service Com.* (1992) 6 Cal.App.4th 125, 129 [8 Cal.Rptr.2d 548]), the trial court exercises its independent judgment to determine whether due process requirements were met and whether the agency's findings are supported by the weight of the evidence. (*Strumsky v. San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 32 [112 Cal.Rptr. 805, 520 P.2d 29]; *Kazensky v. City of Merced* (1998) 65 Cal.App.4th 44, 51 [76 Cal.Rptr.2d 356] (*Kazensky*).) An appellate court must sustain the trial court's factual findings if substantial evidence supports them, resolving all conflicts in favor of the prevailing party, and giving that party the benefit of every reasonable inference in support of the judgment. (*Kazensky*, at p. 52.)

Judicial review of an agency's assessment of a penalty is limited, and the agency's determination will not be disturbed in mandamus proceedings unless there is an arbitrary, capricious or patently abusive exercise of discretion by the agency. (*Kazensky, supra*, 65 Cal.App.4th at p. 54.) "Neither a trial court nor an appellate court is free to substitute its discretion for that of an administrative agency concerning the degree of punishment imposed. [Citations.]" (*California Real Estate Loans, Inc. v. Wallace* (1993) 18 Cal.App.4th 1575, 1580 [23 Cal.Rptr.2d 462].) If reasonable minds may differ with regard to the propriety of the disciplinary action, no abuse of discretion has occurred. (*County of Los Angeles v. Civil Service Com.* (1995) 39 Cal.App.4th 620, 634 [46 Cal.Rptr.2d 256].) An appellate court conducts a de novo review of the trial court's determination of the penalty assessed, giving no deference to the trial court's determination. (*Deegan v. City of Mountain View* (1999) 72 Cal.App.4th 37, 46 [84 Cal.Rptr.2d 690].)

## II. Skelly *Hearing*

■ In *Skelly, supra,* 15 Cal.3d 194, the California Supreme Court held that in order to satisfy due process, an agency considering disciplinary action against a public employee must accord the employee certain "preremoval safeguards," including "notice of the proposed action, the reasons therefor, a copy of the charges and materials upon which the action is based, and the right to respond, either orally or in writing, to the authority initially imposing discipline." (*Id.* at p. 215.) The Supreme Court's directive gave rise to an administrative procedure known as a *Skelly* hearing, in which an employee has the opportunity to respond to the charges upon which the proposed discipline is based.

In this case, respondent was notified of his proposed dismissal and the charges upon which the dismissal was based by a memorandum from John Sharp dated July 3, 2003. In the memorandum, Mr. Sharp advised respondent of his right to a *Skelly* hearing and informed him that Mr. Sharp would serve as the *Skelly* hearing officer. The memorandum states: "You may respond to this proposed discipline either orally or in writing to me. Your response is an opportunity to inform me of any facts pertaining to this proposed discipline which may not have been considered. I will take your response into consideration in making my decision on this matter. [¶] If you choose to respond, you may discuss this matter with me in my office, and have a representative present if desired. You may also respond in writing, if you prefer. In either case, your response must be submitted no later than 3:30 p.m. on July 14, 2003."

Respondent contends he was denied his due process rights under *Skelly, supra,* 15 Cal.3d 194, because Mr. Sharp could not properly serve as a *Skelly* hearing officer. Respondent argues that because Mr. Sharp made the initial recommendation to discharge respondent, he was not sufficiently impartial to serve as the *Skelly* hearing officer. (See *Civil Service Assn. v. Redevelopment Agency* (1985) 166 Cal.App.3d 1222, 1227 [213 Cal.Rptr. 1] (*Civil Service*) [employee's right to respond "implies an opportunity for the employee to present an explanation or version of whatever events or circumstances led to the potential dismissal 'before a reasonably impartial, noninvolved reviewer . . . .' [Citation.]"].) Both the Board and the trial court found that respondent waived his right to a *Skelly* hearing. Substantial evidence supports that finding.

By memorandum dated July 3, 2003, respondent received notice of his right to a *Skelly* hearing and that Mr. Sharp would serve as the *Skelly* hearing officer. The hearing was scheduled to occur on or before July 14, 2003. Respondent raised no objection to Mr. Sharp acting as the hearing officer until January 7, 2004—more than seven months later. Respondent offers no valid reason why his objection to Mr. Sharp could not have been asserted earlier, when the DWP had the opportunity to respond to the objection and possibly obviate it. Respondent's failure to raise a timely objection to Mr. Sharp's impartiality at the time of the *Skelly* hearing was arguably a forfeiture of the right to do so on appeal.

Moreover, the record shows that respondent waived his right to a *Skelly* hearing altogether. Respondent's union representative met with Mr. Sharp sometime before July 14, 2003. Respondent chose not to participate in that meeting, but waited in an adjacent conference room. At the meeting, neither respondent nor his union representative presented any mitigating information in response to the charges that were the basis for respondent's proposed dismissal. Instead, the union representative presented an offer by respondent to retire in lieu of the dismissal, and Mr. Sharp accepted respondent's offer to retire. Respondent was accorded his due process right to confront the charges against him and to present mitigating information in his favor at a *Skelly* hearing. He chose not to exercise that right. Substantial evidence supports the trial court's determination that respondent waived his right to a *Skelly* hearing. In view of such waiver, respondent forfeited the right to challenge Mr. Sharp as an appropriate *Skelly* hearing officer.

Even absent any forfeiture, no due process violation occurred. Respondent's objection to Mr. Sharp acting as the *Skelly* hearing officer would categorically disqualify any official initiating disciplinary action against an employee from presiding over that employee's *Skelly* hearing. There is no authority that precludes an officer from performing such a dual function. *Titus v. Civil Service Com.* (1982) 130 Cal.App.3d 357 [181 Cal.Rptr. 699] and *Bollinger v. San Diego Civil Service Com.* (1999) 71 Cal.App.4th 568 [84 Cal.Rptr.2d 27], on which respondent relies in support of his position, are inapposite. Neither of those cases challenged the impartiality of a *Skelly* hearing officer because that same officer had initially recommended imposing the employee discipline.

Respondent's position appears at first glance to find some support in *Civil Service, supra*, 166 Cal.App.3d 1222; however, a closer examination of that case shows that the opposite is true. In *Civil Service*, an agency's deputy

executive director issued an initial notice of termination to an employee. The deputy executive director then conducted an evidentiary hearing at which several witnesses, including the employee, testified, and subsequently advised the employee that the decision to discharge was upheld. The employee sought review of that decision under agency regulations providing a right of appeal " 'through normal management channels to the Executive Director.' " (*Id.* at p. 1224.) The executive director refused to review the decision, arguing in effect that this function had been delegated to the deputy executive director. The employee then initiated mandamus proceedings, claiming the agency had failed to follow its own written personnel policies. On appeal from the superior court's denial of the employee's petition for administrative mandamus, the Court of Appeal invalidated the employee's discharge on the ground that the executive director's attempted delegation of its review authority violated the agency's regulations. The court then went on to denounce "the defective practice" of having the same person who initially imposed the discipline review that decision: "[A] right to respond to charges 'to the authority initially imposing discipline' [citation] implies an opportunity for the employee to present an explanation or version of whatever events or circumstances led to the potential dismissal 'before a reasonably impartial, noninvolved reviewer . . . .' [Citation.] A right to appeal, in common understanding, occurs *after* final discipline is invoked and implies a further review by another, presumably neutral authority. [Citation.] Obviously, Agency's apparent practice of having the same person who originally imposed the discipline also review that decision raises grave doubts as to the fairness of the appeal. [Citations.]" (*Id.* at p. 1227.)

The violation denounced by the court in *Civil Service* was "having the same person who originally imposed the discipline also review that decision." (*Civil Service, supra*, 166 Cal.App.3d at p. 1227.) It is evident from the context of the court's opinion that the court was referring to review of a disciplinary decision in an administrative appeal, and not in a *Skelly* hearing. Indeed, at another point in the opinion, the court states that the evidentiary hearing before the deputy executive director satisfied the due process requirements of *Skelly*: "Although the appeal hearing itself was ineffective under governing personnel policy rules, it was at least adequate for purpose of assuring procedural safeguards mandated under *Skelly*." (*Ibid.*) The court's statement thus implicitly affirms the apparently common practice of having the same official who initiates an employee disciplinary proceeding also conduct the *Skelly* hearing.

Respondent has failed to establish that Mr. Sharp's dual role as the *Skelly* hearing officer and the person who initially recommended respondent's

discharge was a violation of respondent's due process rights. Mr. Sharp's involvement consisted of investigating the charges of misconduct; recommending respondent's discharge; and conducting the *Skelly* hearing at which respondent had the opportunity to respond to the charges and recommendation. The penalty of discharge was then "imposed" by a different DWP manager named Thomas Hokinson, who approved Mr. Sharp's recommendation. Two more stages of review followed: a full evidentiary hearing before a neutral hearing examiner appointed by the Board, and a review of the hearing examiner's decision by the Board itself. Here, the only sense in which an "involved" person reviewed his own prior determination is that Mr. Sharp made the initial recommendation that respondent be dismissed and then served as the *Skelly* hearing officer. Neither *Civil Service, supra*, 166 Cal.App.3d 1222, nor any other authority prohibits such dual function, when the employee receives three more levels of administrative review, including a full evidentiary hearing before a neutral hearing examiner. On this record, respondent has not met his burden of establishing any due process violation in the conduct of the *Skelly* hearing.

III. *Penalty*

The trial court found that the weight of the evidence supported the charges sustained by the Board against respondent (insubordination, sleeping on the job, and misconduct on or off the job seriously reflecting on city employees). Respondent has not challenged those findings in this appeal. The trial court also acknowledged that the DWP's guidelines authorize discharge as an appropriate penalty for any one of those charges as a first offense, but nevertheless concluded that the decision to discharge respondent was an abuse of discretion.

Having concluded that the charges sustained by the Board against respondent were true, the trial court was required to uphold the penalty imposed if there was any reasonable basis for doing so. (*Kazensky, supra*, 65 Cal.App.4th at p. 54.) As discussed, the penalty imposed by an administrative agency will not be disturbed in a mandamus proceeding absent a manifest abuse of discretion. (*Ibid.*) "It is only in the exceptional case, when it is shown that reasonable minds cannot differ on the propriety of the penalty, that an abuse of discretion is shown. [Citations.]" (*Deegan v. City of Mountain View, supra*, 72 Cal.App.4th at p. 47.) No such showing has been made here. Sustaining respondent's discharge was not an abuse of discretion by the Board, and the trial court erred by concluding otherwise.

## DISPOSITION

The judgment is reversed. The matter is remanded to the trial court, and the trial court is directed to deny respondent's petition for writ of administrative mandamus and to enter a new judgment in favor of the Board. The DWP is awarded its costs on appeal.

Boren, P. J., and Ashmann-Gerst, J., concurred.