[No. E043187. Fourth Dist., Div. Two. Dec. 23, 2008.]

RIVERSIDE COUNTY SHERIFF'S DEPARTMENT, Plaintiff and Respondent, v.
LOUIS M. ZIGMAN, Defendant and Respondent;
ASTRID MEGAN REYNOLDS, Real Party in Interest and Appellant.

COUNSEL

Law Offices of Peter F. Murray and Peter F. Murray for Real Party in Interest and Appellant.

Ferguson, Praet & Sherman and Kelly R.M. Irwin for Plaintiff and Respondent.

No appearance for Defendant and Respondent.

OPINION

**RAMIREZ, P. J.**—Real party in interest and appellant Riverside County Sheriff's Deputy Astrid Megan Reynolds (Deputy Reynolds) appeals from the trial court's judgment granting a petition for writ of administrative mandate filed by the Riverside County Sheriff's Department (RSD) against arbitrator Louis M. Zigman. This case concerns an appeal from an eight-hour reduction in pay for Deputy Reynolds for having violated RSD policy by failing to inform her supervisors of a conversation in which her husband, Riverside County Sheriff's Deputy James Reynolds, admitted that he used and stole methamphetamine. The arbitrator who heard Deputy Reynolds's administrative appeal stated that he overturned the discipline because it was based on a communication between Deputy Reynolds and her husband that was protected by the marital privilege. The major issue in this appeal is whether the marital communications privilege applies in law enforcement administrative investigations and hearings. A secondary issue is whether Deputy Reynolds voluntarily waived any such privilege.

As discussed below, we conclude the privilege does not apply in law enforcement administrative investigations and hearings. Our courts have consistently held that the more fundamental, constitutional privilege against self-incrimination does not apply in law enforcement administrative investigations for reasons of public policy. The administrative appeal of any punitive action taken as a result of the administrative investigation can only be effective if conducted using the same rules of privilege as in the administrative investigation. Given this holding, the issue of waiver is moot.

I.

STATEMENT OF FACTS

Deputy James Reynolds began to use methamphetamine in late 2002 or early 2003. He also began to steal methamphetamine from people he arrested

and from other deputies who had seized the drug. In March or April 2003, at their home, Deputy Reynolds asked her husband why he was acting so irritable. Deputy James Reynolds confessed that he had been using methamphetamine. During the course of a two-hour-long argument, he also admitted that he had been stealing the drug. Deputy James Reynolds promised he would stop both practices. In his criminal interview, Deputy James Reynolds told investigators that he and his wife never discussed the matter again and that he gave her no reason to believe that he continued using methamphetamine.

On or about June 24, 2003, RSD began a personnel investigation into Deputy Reynolds, Deputy James Reynolds, and three other deputies after a tip from a deputy that Deputy James Reynolds was stealing methamphetamine from suspects and other deputies. A criminal investigation began at about the same time. In a July 3, 2003, sting operation, Deputy James Reynolds was caught stealing six grams of methamphetamine from what he thought was a crime scene. In his criminal interview the same day, Deputy James Reynolds admitted that he had obtained methamphetamine from the other three deputies, and that his wife, Deputy Reynolds, knew of his methamphetamine use and theft.

Deputy Reynolds was also interviewed for the criminal investigation on July 3, 2003. She admitted that her husband had told her he was using methamphetamine. Although the transcript indicates that many of Deputy Reynolds's answers were inaudible on the tape recording, she answered "Yes" when reminded by the investigator that, "Just a few minutes ago you told me that he told you he used it a few months ago. Is that correct?" Deputy Reynolds also stated, "I tell him that I'd kick his ass up and down the street . . . if there was any in the house."

Deputy Reynolds was interviewed for the administrative investigation on October 7, 2003. Her union representative was present. Deputy Reynolds invoked her right against self-incrimination under *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602] and told the investigator that she did not want to speak to him. The investigator ordered Deputy Reynolds to cooperate and advised her that, while any answers could not be used against her in a criminal proceeding, she could be subject to disciplinary action if she refused to cooperate, citing "the *Lybarger* admonition, admonishment."[1] A discussion ensued as to whether Deputy Reynolds wished to invoke the marital communications privilege and what that would mean.

---

[1] *Lybarger v. City of Los Angeles* (1985) 40 Cal.3d 822 [221 Cal.Rptr. 529, 710 P.2d 329] holds that law enforcement officers must be advised, before being compelled to answer questions during an administrative interview, that incriminating statements obtained during that interview cannot be used against them in a criminal investigation.

After consulting with her representative, Deputy Reynolds stated that she wished to invoke the privilege. Deputy Reynolds further stated, "I want to make it clear that I do not wish in any way to be insubordinate and if ordered to answer the question, I certainly will." When asked if she had invoked the privilege during the interview for the criminal investigation, Deputy Reynolds stated that she answered the investigators' questions because she didn't feel she could invoke the privilege.

In the administrative interview, Deputy Reynolds backtracked on her earlier description of the conversation between herself and her husband. Deputy Reynolds would not repeat her prior statement that she knew her husband was using methamphetamine because he had told her so. Rather, she stated that she did not know her husband was using methamphetamine until the beginning of the investigation. Deputy Reynolds denied telling the investigators during the criminal interview that she knew about her husband's methamphetamine use. Deputy Reynolds's vague descriptions of the argument between herself and her husband differed from that in the criminal interview considerably. She stated that she thought she heard him tell her he had used methamphetamine, but was not sure and could not get him to confirm this or tell her anything more. Deputy Reynolds said she walked away from the conversation thinking she had probably heard wrong. She described her knowledge of his drug use after the argument as "[s]uspected would be a strong word for it." Deputy Reynolds also stated that it was only after her husband was arrested that she was convinced he was using methamphetamine.

Deputy Reynolds received an eight-hour reduction in pay for having failed to report her husband's drug use to her supervisor. She appealed the discipline, and asserted the marital communications privilege at the arbitration hearing. The hearing officer ruled that all evidence of Deputy Reynolds's conversation with her husband was inadmissible under the marital communications privilege. Absent this evidence, the hearing officer concluded that just cause did not support the eight-hour suspension, and so rescinded the discipline.

RSD filed a writ with the superior court asking it to overturn the hearing officer's opinion and award. After a hearing, the superior court granted the writ and ordered the arbitration hearing officer to reconsider the opinion and award consistent with the court's ruling that the marital communications privilege does not apply in law enforcement administrative investigations or hearings. This appeal followed.

## II.

### DISCUSSION

The main issue in this appeal is whether the marital communications privilege applies to law enforcement administrative investigations and hearings. The privilege is set forth in section 980 of the Evidence Code:[2] "Subject to Section 912 [waiver] . . . a spouse . . . whether or not a party, has a privilege during the marital relationship and afterwards to refuse to disclose, and to prevent another from disclosing, a communication if he claims the privilege and the communication was made in confidence between him and the other spouse while they were husband and wife."

There is no case law directly addressing whether the *statutory* marital communications privilege applies to law enforcement administrative investigations. However, the law is quite clear that the *constitutional* privilege against self-incrimination does not apply to law enforcement administrative investigations where, as here, the statements cannot be used in subsequent criminal proceedings. "[A] peace officer has no absolute right under the Constitution to refuse to answer potentially incriminating questions asked by his or her employer; instead, the officer employee's right against self-incrimination is deemed adequately protected by precluding any use of his or her statements at a subsequent criminal proceeding should such charges be filed." (*Pasadena Police Officers Assn. v. City of Pasadena* (1990) 51 Cal.3d 564, 578 [273 Cal.Rptr. 584, 797 P.2d 608], citing *Lybarger v. City of Los Angeles, supra*, 40 Cal.3d at p. 827.)

The analogous attorney-client privilege, also a creation of statute,[3] is trumped by a law enforcement officer's duty to report criminal activity to his or her employer. In *Titus v. Civil Service Com.* (1982) 130 Cal.App.3d 357 [181 Cal.Rptr. 699], a lieutenant in the sheriff's department was discharged for refusing to cooperate in a criminal investigation after invoking the attorney-client privilege. Although the investigation at issue in *Titus* was criminal rather than administrative, the appellate court made it clear that where a law enforcement officer has conflicting duties or divided loyalties, the conflict must be resolved in favor of the officer's duties and loyalties to the law enforcement agency. (*Id.* at p. 364.) The court in *Titus* cited the oft-quoted *Christal v. Police Commission* (1939) 33 Cal.App.2d 564 [92 P.2d 416] for the policy reasons behind making law enforcement officers choose

---

[2] All further statutory references are to the Evidence Code unless otherwise indicated.

[3] Section 950 et seq. The purpose of the privilege is to "encourage a client to disclose all relevant facts to his attorney by removing any apprehension that the confidential communications will later be disclosed to others." (*Vela v. Superior Court* (1989) 208 Cal.App.3d 141, 147 [255 Cal.Rptr. 921].)

their duties over constitutional and statutory privileges enjoyed by other citizens. " 'Such officers are the guardians of the peace and security of the community, and the efficiency of our whole system, designed for the purpose of maintaining law and order, depends upon the extent to which such officers perform their duties and are faithful to the trust reposed in them.' " (*Titus v. Civil Service Com., supra,* at p. 364, quoting *Christal v. Police Commission, supra,* at pp. 567–568.)

We further acknowledge the policy considerations set forth in *Christal*, as pointed out by RSD in its responsive brief. "There is nothing startling in the conception that a public servant's right to retain his office or employment should depend upon his willingness to forego his constitutional rights and privileges to the extent that the exercise of such rights and privileges may be inconsistent with the performance of the duties of his office or employment." (*Christal v. Police Commission, supra,* 33 Cal.App.2d at p. 569.) While *Christal* also involved a criminal investigation rather than an administrative one, it sets forth the concept that even a law enforcement officer's constitutional privileges, and much more so the merely statutory privilege at issue in this case, must yield when their exercise is inconsistent with the performance of the officer's duties. Here, Deputy Reynolds's duties included the one set forth in RSD's general orders section 202.28, to "directly and promptly" inform her supervisor that her husband had committed a criminal offense and violated department regulations by using and stealing methamphetamine.

As pointed out in an opinion by the Attorney General addressing the very subject at issue here: "The right to avoid self-incrimination is a privilege of constitutional dimension [citations], while . . . marital privileges . . . are only statutory grants that must be narrowly construed [citations]." (89 Ops.Cal.Atty.Gen. 224, 229 (2006).) In that opinion, the Attorney General concluded that the marital communications privilege is unavailable to a married peace officer who is interrogated during a law enforcement agency's internal affairs investigation of alleged police misconduct involving the peace officer's spouse. The Attorney General reasoned as follows. First, the privilege set forth in section 980 applies only in "proceedings."[4] Second, a "proceeding" means a hearing or inquiry, etc., in which by "law, testimony can be compelled to be given," which means it can be compelled by subpoena.[5] Third, a law enforcement agency does not have subpoena power

---

[4] "Except as otherwise provided by statute, the provisions of [sections 900 through 1070] apply in all proceedings. . . ." (§ 910.)

[5] " 'Proceeding' means any action, hearing, investigation, inquest, or inquiry (whether conducted by a court, administrative agency, hearing officer, arbitrator, legislative body, or any other person authorized by law) in which, pursuant to law, testimony can be compelled to be given." (§ 901.)

when conducting an internal affairs investigation. Therefore, an internal affairs investigation is not a "proceeding" in which the marital communications privilege applies.

Especially pertinent to this appeal, the Attorney General extended this logic to conclude that evidence regarding marital communications that are disclosed during an internal affairs investigation can be introduced in subsequent administrative or court "proceedings" to challenge or support any disciplinary actions resulting from the internal affairs investigation. The parties in this matter do not dispute that the arbitration hearing that served as Deputy Reynolds's administrative appeal is a "proceeding" under sections 901 and 910.

The Attorney General opinion reasons that: "[*T*]*he subsequent proceeding is a continuation of the internal affairs investigation* and the disciplinary action taken by the law enforcement agency; it involves the same parties. This proceeding is to be distinguished from a criminal prosecution or a separate civil action that does not involve a challenge to the disciplinary action taken by the agency. As such, *the proceeding, directly resulting from an appeal by the disciplined peace officer, represents merely a phase or state of the same overall administrative inquiry* into the circumstances of the alleged misconduct and the propriety of the agency's disciplinary action taken in response thereto." (89 Ops.Cal.Atty.Gen., *supra*, at p. 230, italics added.)

Government Code section 3304, subdivision (b),[6] makes it clear that a law enforcement agency cannot take any punitive action against a law enforcement officer without providing the officer the opportunity to have an administrative appeal, which opportunity Deputy Reynolds chose to exercise in this case. Therefore, if the officer could simply assert the privilege in the administrative appeal to which he or she is entitled by law, it would defeat the purpose of allowing the law enforcement agency to use information otherwise protected by the marital communications privilege when it conducts its administrative investigation and decides whether to take punitive employment action. The agency would be precluded from using the very information it used to make the personnel decision when it defends the decision before the arbitrator in a direct review. The net result is that any information otherwise protected by the marital communications privilege would be utterly useless to the law enforcement agency because the Evidence Code's limitation of statutory privileges to "proceedings" would not apply to any investigation or action that could be reviewed in a "proceeding." Or, as the Attorney General put it better, "[A]ny reviewing body . . . would plainly

---

[6] "No punitive action . . . shall be undertaken by any public agency against any public safety officer . . . without providing the public safety officer with an opportunity for administrative appeal." (Gov. Code, § 3304, subd. (b).)

be unable to fairly evaluate the . . . appropriateness of the law enforcement agency's disciplinary action if it were precluded, through a witness's assertion of a privilege, from considering . . . evidence that the agency's investigators properly acquired during the internal affairs investigation and that the agency . . . consider[ed] in imposing the disciplinary action." (89 Ops.Cal.Atty.Gen., *supra*, at p. 230.)

We do not lightly extend or restrict the application of statutory privileges outside of the plain meaning of the statute, in this case both applying and limiting the Evidence Code privileges to "proceedings" as set forth in sections 901 and 910. However, if we interpret the law to allow the assertion of these privileges in "proceedings" that directly review the actions taken in "[non]proceedings," such as administrative investigations that result in punitive personnel actions, then the exemption for "[non]proceedings" for which there is a mandatory direct review in a "proceeding" is in practice nonexistent.

■ " '[I]n construing a statute, a court [must] ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.] . . . If . . . the terms of a statute provide no definitive answer, then courts may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history. [Citation.] 'We must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' [Citation.]" (*People v. Coronado* (1995) 12 Cal.4th 145, 151 [48 Cal.Rptr.2d 77, 906 P.2d 1232].) As stated by the Attorney General, "If the goals of the [Public Safety Officers Procedural Bill of Rights] Act are to be effectuated, the previously disclosed marital communications must be available in any subsequent, related proceedings in which the law enforcement agency defends its disciplinary action." (89 Ops.Cal.Atty.Gen., *supra*, at p. 231.)

■ The opinions of the Attorney General are not binding on this court, of course, but they are entitled to "great respect." (*Wenke v. Hitchcock* (1972) 6 Cal.3d 746, 751–752 [100 Cal.Rptr. 290, 493 P.2d 1154].) This opinion is factually on point because it concerns the assertion of the marital communications privilege in a law enforcement administrative investigation, but we also find the reasoning to be persuasive as to whether the privilege should then be extended to the "proceeding" that constitutes the administrative appeal guaranteed by Government Code section 3304, subdivision (b).

■ To reiterate, because the constitutional, fundamental privilege against self-incrimination does not apply to law enforcement administrative investigations, neither does the more limited statutory marital communications privilege. Further, because the law enforcement officer is guaranteed an

administrative appeal of any punitive decisions the agency may decide to take as a result of its administrative investigation, the only way to make the administrative appeal meaningful, and in so doing to give effect to Government Code section 3304, subdivision (b), is to use the same rules of privilege in the administrative appeal as in the administrative investigation.

█ Because we conclude that the marital communications privilege does not apply in law enforcement administrative investigations and hearings, we need not determine whether Deputy Reynolds waived the privilege.

## III.

### DISPOSITION

The judgment of the trial court is affirmed. Real party in interest to pay RSD's costs on appeal.

Richli, J., and King, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied March 25, 2009, S170503.