Filed 11/20/13  Ruiz v. Gardens CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| RENE RUIZ,<br><br>             Plaintiff and Appellant,<br><br>      v.<br><br>CITY OF BELL GARDENS,<br><br>             Defendant and Respondent. | B244395<br><br>(Los Angeles County<br>Super. Ct. No. BS132638) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  James C. Chalfant, Judge.  Affirmed.

Law Office of Michael A. Morguess and Michael A. Morguess for Plaintiff and Appellant.

Liebert Cassidy Whitmore, Richard M. Kreisler and T. Oliver Yee for Defendant and Respondent.

Appellant Rene Ruiz (Ruiz) is a former police officer who challenges the termination of his employment with respondent City of Bell Gardens (City) after a hearing officer sustained multiple charges against him for misconduct and for violation of City policies. The trial court initially denied Ruiz's petition for administrative mandamus, after finding that the evidence supporting a charge of dishonesty had been obtained in violation of the Public Safety Officers Procedural Bill of Rights Act (Gov. Code, § 3300 et seq.)[1] (PBRA), but upholding the remaining charges, as well as the penalty of termination. Ruiz then filed a motion for reconsideration. The trial court granted that motion and entered a judgment granting in part and denying in part Ruiz's petition for writ of mandate. The judgment remanded the matter to the City to amend its decision in a manner consistent with the trial court's ruling that the dishonesty charge was unsupported by the evidence and otherwise denied the petition for writ of mandate. We affirm the judgment.

## BACKGROUND

Ruiz was employed by the City's police department (the Department) from February 2003 to August 11, 2009. His last assignment was as a detective in the Department's Special Investigations Unit (SIU), and his responsibilities included investigating gang-related crimes.

Ruiz's prior disciplinary record included a suspension without pay in 2004 for an incident that occurred in the Bicycle Casino Club. Ruiz had covered a video camera in the casino's security office while another officer used force against a handcuffed female. Ruiz not only attempted to cover the camera, he also failed to notify a supervisor and to document the use of force.

**Internal affairs investigation No. 08-06 (IA No. 08-06)**

The Department's investigation of Ruiz was prompted by several events. In December 2007, then Chief of Police Keith Kilmer received an anonymous letter alleging that Ruiz was having an affair with a "homegirl" who was subsequently revealed to be

---

[1] All further statutory references are to the Government Code unless otherwise indicated.

Graciella Lagunas (Lagunas). Lagunas's three brothers were notorious members of the Bell Gardens Locos street gang. The author of the letter further alleged that Ruiz was disclosing information about law enforcement activities to Lagunas and to members of the Bell Gardens Locos gang. During the summer of 2008, Chief Kilmer learned that Ruiz had arrested Lagunas on a felony weapons charge, but the charges had subsequently been reduced to a misdemeanor for resisting arrest. In November 2008, Chief Kilmer instructed Lieutenant Jeffery Travis to obtain copies of Lagunas's arrest report and Ruiz's testimony at Lagunas's June 27, 2008 preliminary hearing.

On November 26, 2008, Lieutenant Travis served Ruiz with written notice that he was being put on paid administrative leave pending the Department's IA No. 08-06 regarding an incident on June 27, 2008. Although the written notice given to Ruiz did not disclose the subject of the Department's investigation, IA No. 08-06 involved an investigation into Ruiz's relationship with Lagunas and his testimony at Lagunas's June 27, 2008 preliminary hearing.

The written notice given to Ruiz advised him that certain orders governed his paid administrative leave status. Two of those orders, order No. 5 and order No. 7, are relevant to this appeal. Order No. 5 states: "You are prohibited from entering any part of any City facility which is not open to the general public." Order No. 7 states: "You are prohibited from discussing any aspect of [IA] No. 08-06 with any employee of the [City] (subject to a singular exception applicable to any one individual that may have been designated by you as a representative in these proceedings)." The notice further advised Ruiz that failure to comply with any of the orders contained in the notice "shall in and of itself result in a disciplinable act of insubordination."

On November 26, 2008, the same day he was served with the notice of paid administrative leave, Ruiz arranged a meeting with Detective Angel Puente and Sergeant Ruben Musquiz at a Denny's restaurant parking lot. Sergeant Musquiz was Ruiz's immediate supervisor in the SIU's gang division. Detective Puente was president of the Bell Gardens Police Officers Association and Ruiz's colleague in the SIU. Before going to the Denny's parking lot, Ruiz asked Detective Puente if he would serve as Ruiz's

3

union representative, and Detective Puente agreed. While in the Denny's parking lot, Detective Puente contacted a law firm and obtained a verbal commitment from an attorney at that firm to represent Ruiz in connection with the Department's investigation.

In the Denny's parking lot, Ruiz asked Sergeant Musquiz and Detective Puente if they knew why he was being investigated. Lagunas's name came up during the conversation. Ruiz specifically mentioned Lagunas and said he had met with her at times when he was not on duty.

On November 27, 2008, the day after being served with the notice of paid administrative leave, Ruiz had a telephone conversation with Detective Mark Cobian. Detective Cobian told Ruiz about information he had received from a confidential informant regarding Lagunas. According to the informant, Lagunas had recently been interviewed by two police officers named Dow and Travis. Ruiz later admitted that at the time of his telephone conversation with Detective Cobian, he knew that IA No. 08-06 concerned Lagunas and that discussing her with Detective Cobian was improper.

On November 28, 2008, Ruiz telephoned Officer Rigo Barrios, his former partner in the SIU's gang unit. During their conversation, Ruiz mentioned Lagunas and asked Officer Barrios whether he remembered meeting Lagunas while Ruiz was present. Because Officer Barrios believed that Lagunas had something to do with Ruiz's investigation, he told Ruiz that he did not want to discuss her. Ruiz later admitted that at the time of his conversation with Officer Barrios, he knew that IA No. 08-06 concerned Lagunas, and that his questions about Lagunas were improper.

Also on November 28, 2008, Ruiz telephoned Detective Puente and asked him to accompany Ruiz to the police station because he wanted to obtain arrest reports and telephone records related to Lagunas. When Detective Puente said he was unable to do so because of work commitments, Ruiz arranged for Sergeant Musquiz to take him to the SIU trailer later that day. Ruiz asked Sergeant Musquiz to meet him at a nearby Denny's. Sergeant Musquiz picked up Ruiz at the Denny's parking lot and drove him to the police station. Ruiz and Sergeant Musquiz arrived at the SIU trailer, which was locked and unoccupied, at approximately 10:00 p.m. Upon entering the trailer, Ruiz asked Sergeant

4

Musquiz to research a particular date on the Department's computer. Before Sergeant Musquiz could do so, Lieutenant Travis and Chief Kilmer entered the trailer. Lieutenant Travis asked Ruiz what he was doing there, and Ruiz responded that he was retrieving some personal items. When Lieutenant Travis asked Ruiz where his personal vehicle was parked, Ruiz responded that it was parked "up the street." Lieutenant Travis then asked Ruiz how he had gotten to the trailer, and Ruiz said he had walked. Ruiz later admitted he had lied to Lieutenant Travis because he wanted to protect Sergeant Musquiz.

**Internal affairs investigation No. 08-07 (IA No. 08-07)**

IA No. 08-07 involved an investigation into Ruiz's inappropriate use of his Department issued email account and cellular telephone to transmit non-business pornographic photographs and email messages. The investigation commenced after the Department examined Ruiz's computer account and email messages when closing Ruiz's account pending the investigation of IA No. 08-06.

The Department's investigation revealed that between November 9, 2006 and August 8, 2007, Ruiz had used his Department email account to exchange pornographic photographs and sexually explicit emails with Tommie Gonzalez, a female citizen. The investigation also showed that between November 15, 2007 and October 18, 2008, Ruiz used his Department issued cellular telephone to make 35 non-police related telephone calls to Gonzalez while on duty. Finally, the investigation showed that on March 1, 2008 and November 17, 2008, Ruiz used his Department issued cell phone to send photographs of a female's partially exposed breasts to his Department email account. Ruiz admitted to having committed these incidents of misconduct.

**Termination of Ruiz's employment and administrative appeal**

The City terminated Ruiz's employment effective August 13, 2009. Ruiz appealed his termination, and an administrative hearing was held before the assistant city manager acting as a hearing officer.

At the outset of the hearing, the City's attorney asked that various witness interview summaries, including a summary of the Department's investigative interview of Detective Puente, be marked and admitted into evidence. The hearing officer asked

5

Ruiz's counsel if he had any objection, and Ruiz's counsel responded "No objection." The hearing officer thereafter admitted the interview summaries into evidence as the City's exhibit 9.

Detective Puente testified at the administrative hearing. During Detective Puente's testimony, Ruiz's counsel asked that any communication between Ruiz and Detective Puente be excluded from the record, including Ruiz's November 28, 2008 telephone conversation with Detective Puente before entering the SIU trailer. Counsel for the City pointed out that no prior objection had been made and that all evidence received prior to the objection by Ruiz's counsel was admissible as evidence on the record.

The hearing officer ruled that the communications between Detective Puente and Ruiz on November 26, 2008, in the Denny's parking lot were not privileged because they took place in the presence of Sergeant Musquiz, a third party. The hearing officer also ruled that no privilege attached to the November 28, 2008 conversation between Detective Puente and Ruiz about entering the SIU trailer because Detective Puente was not Ruiz's employee representative at that time. The hearing officer concluded that any employee representative relationship between Detective Puente and Ruiz terminated when Ruiz obtained representation by legal counsel. The hearing officer noted that Detective Puente was not present during the Department's investigative interviews of Ruiz, nor was he present during any meeting between Ruiz and the Department's management to discuss Ruiz's termination.[2]

At the conclusion of the hearing, the hearing officer prepared a written decision sustaining the allegations that Ruiz violated order No. 5 of IA No. 08-06 prohibiting him from entering any part of any City facility not open to the public. The hearing officer found that Ruiz's reasons for entering the SIU trailer were not credible. Ruiz's assertion that he thought his presence in the trailer had been authorized by his supervisor, Sergeant Musquiz, lacked merit because he had initially asked Detective Puente, a peer and not a

---

**2**      Such a meeting is commonly called a Skelly hearing, after *Skelly v. State Personnel Board* (1975) 15 Cal.3d 194.

6

supervisor, to accompany him to the trailer. The hearing officer further found that Ruiz's stated reason for being in the trailer to retrieve personal belongings lacked credibility because his first act upon entering the trailer was not to gather his personal belongings but rather to ask Sergeant Musquiz to research information related to Lagunas on the Department computer. The hearing officer found that Ruiz was dishonest when he told Lieutenant Travis and Chief Kilmer that his reason for entering the trailer was to retrieve personal items, and that he had walked to the SIU trailer in response to Lieutenant Travis's question as to how Ruiz had arrived at the trailer.

The hearing officer also sustained the allegations that Ruiz violated order No. 7 of IA No. 08-06 prohibiting him from discussing any aspect of the investigation with any City employee except his designated representative. The hearing officer found that Ruiz's discussions with Sergeant Musquiz and Detective Puente at the Denny's parking lot on November 26, 2008, his telephone conversation with Detective Cobian on November 28, 2008, and his telephone conversation with Officer Barrios on November 28, 2008, all were in violation of order No. 7.

With regard to IA No. 08-07, the hearing officer found that based on Ruiz's own admissions at the administrative hearing, Ruiz had improperly used his Department email account and cellular telephone to send and receive pornographic photographs and messages.

The hearing officer found just cause to terminate Ruiz's employment and further found that the City's decision to terminate Ruiz was not an abuse of discretion.

**Mandamus proceedings**

Ruiz filed a petition for writ of mandate, alleging that the City's decision to terminate his employment was not supported by the evidence and that the penalty of termination was excessive as a matter of law. Ruiz further argued that the Department's summary of Detective Puente's investigative interview should be suppressed because that interview violated Ruiz's rights under section 3303, subdivision (i) of the PBRA by intruding on the confidentiality of his communications with his representative and by threatening punitive action against Detective Puente if he did not submit to the interview.

7

The trial court denied Ruiz's request to suppress statements made by Detective Puente during the Department's investigative interview. The court concluded that Detective Puente's role as Ruiz's representative did not preclude the Department from interviewing Detective Puente about his own actions without violating any confidentiality. The trial court further concluded that Sergeant Musquiz's presence during the conversations between Detective Puente and Ruiz at the Denny's parking lot on November 26, 2008, precluded any claim of confidentiality with respect to those conversations. With regard to Ruiz's conversation with Detective Puente about entering the SIU trailer on November 28, 2008, the trial court stated:

> "The conversation between [Detective] Puente and Ruiz concerning Ruiz's reasons for going to the trailer--to pick up arrest and crime reports--is different. If confidential, it should be suppressed. But the conversation did not concern historical information which would be subject to confidentiality under section 3303(i). Rather, the conversation was prospective in nature, concerning Ruiz's motivation for going to the trailer that evening. Ruiz cannot hide ongoing or future misconduct by using his union representative to do so. Nothing in section 3303(i) permits that, and [Detective] Puente could be interviewed on that subject."

The trial court also noted that suppression of Detective Puente's interview concerning Ruiz's reasons for entering the SIU trailer would not affect the determination that Ruiz violated order No. 5.

The trial court found, however, that Ruiz's statements in response to Lieutenant Travis's questions in the SIU trailer on November 28, 2008, were taken in violation of the PBRA and should have been suppressed. On that basis, the court overturned the dishonesty charge. The court concluded, however, that the hearing officer's remaining findings supported the decision to terminate Ruiz's employment. The trial court accordingly denied Ruiz's petition on May 3, 2012.

Ruiz filed a motion for reconsideration of the trial court's May 3, 2012 decision denying the petition for writ of mandate. The trial court granted the motion for reconsideration and then granted in part and denied in part Ruiz's petition for writ of mandate. The court issued a peremptory writ of mandamus remanding the matter to the

8

City to amend its December 22, 2012 decision to state that the evidence does not support the administrative charge and finding that Ruiz was dishonest to Lieutenant Travis and Chief Kilmer inside the SIU trailer on the evening of November 28, 2008. The trial court otherwise denied the petition for writ of mandate.

This appeal followed.

## DISCUSSION

### I. Standard of review

In a mandamus proceeding involving a fundamental vested right, such as the right of a city employee to continued employment (*McMillen v. Civil Service Com.* (1992) 6 Cal.App.4th 125, 129), the trial court exercises its independent judgment to determine whether the agency's findings are supported by the weight of the evidence. (*Strumsky v. San Diego County Employees Ret. Ass'n* (1974) 11 Cal.3d 28, 32; *Kazensky v. City of Merced* (1998) 65 Cal.App.4th 44, 51 (*Kazensky*).) An appellate court must sustain the trial court's factual findings that are supported by substantial evidence, resolving all conflicts in favor of the prevailing party, and giving that party the benefit of every reasonable inference in support of the judgment. (*Kazensky*, at p. 52.)

"Judicial review of an agency's assessment of a penalty is limited, and the agency's determination will not be disturbed in mandamus proceedings unless there is an arbitrary, capricious or patently abusive exercise of discretion by the agency. [Citation.] 'Neither a trial court nor an appellate court is free to substitute its discretion for that of an administrative agency concerning the degree of punishment imposed. [Citations.]' [Citation.] If reasonable minds may differ with regard to the propriety of the disciplinary action, no abuse of discretion has occurred. [Citation.] An appellate court conducts a de novo review of the trial court's determination of the penalty assessed, giving no deference to the trial court's determination. [Citation.]" (*Flippin v. Los Angeles City Bd. of Civil Service Commissioners* (2007) 148 Cal.App.4th 272, 279.)

### II. The trial court properly declined to remand the entire matter

Ruiz contends the trial court should have remanded the entire matter back to the City after the court overturned the dishonesty charge based on Ruiz's statements to

9

Lieutenant Travis and former Chief Kilmer inside the SIU trailer on November 28, 2008. The circumstances do not support returning the matter to the City. The City's termination notice designates termination as the appropriate discipline for each of Ruiz's several acts of misconduct and insubordination, including multiple violations of order No. 5 in IA No. 08-06 prohibiting Ruiz from discussing the investigation with any City employee, and for violation of order No. 7, prohibiting him from entering any City property not open to the public. The City thus exercised its discretion to impose the penalty of termination based not on the aggregate findings of violations by Ruiz, "but by segregating the findings as to the several charges and designating the penalty appropriate to each violation." (*Mast v. State Board of Optometry* (1956) 139 Cal.App.2d 78, 92-93.) The hearing officer expressly found that each of Ruiz's several violations of administrative order Nos. 5 and 7 warranted termination of Ruiz's employment, and the trial court sustained those findings. The trial court did not err by declining to remand the matter to the City for reconsideration of the penalty. (*Ibid.*)

## III. Alleged PBRA violations

Ruiz contends Detective Puente's statements made during the Department's investigative interviews concerned confidential communications between Ruiz and his union representative that were improperly received by the City in violation of section 3303, subdivision (i).[3] Ruiz further contends the City obtained Detective Puente's statements in violation of section 3303, subdivision (i) because the City threatened punitive action against Detective Puente in order to obtain privileged communications.

---

[3]     Section 3303, subdivision (i) provides: "Upon the filing of a formal written statement of charges, or whenever an interrogation focuses on matters that are likely to result in punitive action against any public safety officer, that officer, at his or her request, shall have the right to be represented by a representative of his or her choice who may be present at all times during the interrogation. The representative shall not be a person subject to the same investigation. The representative shall not be required to disclose, nor be subject to any punitive action for refusing to disclose, any information received from the officer under investigation for noncriminal matters."

10

The challenged statements are those Detective Puente made to investigating officers during interviews conducted on December 17, 2008 and February 11, 2009, and summarized in a witness interview report included as an exhibit to the Department's investigative report on Ruiz. Ruiz did not make a timely objection to the admission of Detective Puente's interview report in the administrative hearing below and arguably forfeited the right to do so in this mandamus proceeding. (*Dibble v. Gourley* (2002) 103 Cal.App.4th 496, 502, disapproved on another ground in *MacDonald v. Gutierrez* (2004) 32 Cal.4th 150, 157-159; *Morgan v. Community Redevelopment Agency* (1991) 231 Cal.App.3d 243, 258.)

The trial court nevertheless considered Ruiz's request to suppress Detective Puente's statements and found that Detective Puente was Ruiz's union representative. The trial court concluded, however, that section 3303, subdivision (i) did not apply to Ruiz's November 28, 2008 conversation with Detective Puente about Ruiz's reasons for entering the SIU trailer later that day because the conversation concerned matters that were prospective in nature rather than about historical facts relevant to the Department's investigation of Ruiz. We question whether the statutory privilege accorded by section 3303, subdivision (i) can be parsed according to the subject matter of the communication between an officer and his or her designated representative. We need not, however, decide this issue. Suppression of the challenged statements would not affect the findings that Ruiz committed multiple other incidents of misconduct that would support the penalty of termination. Ruiz's entry into the trailer violated the order prohibiting him from entering any City facility not open to the general public, regardless of his reasons for doing so. Ruiz also committed multiple violations of the order prohibiting him from discussing IA 08-06 with other City employees. Any error would thus have been harmless.

## IV. Substantial evidence supports the finding of insubordination

Ruiz contends he did not intentionally violate order No. 5, prohibiting him from entering any part of any City facility not open to the general public, when he entered the SIU trailer on November 28, 2008, because he believed he had permission to do so from

11

Sergeant Musquiz, his supervisor. Order No. 5 contains no exception for a supervisor's permission to enter City property not open to the general public. The order states: "You are prohibited from entering any part of any City facility which is not open to the general public." Ruiz read the order and understood its meaning.

Ruiz's actions belie his proffered justification for entering the trailer -- his reliance on Sergeant Musquiz's permission in order to retrieve some personal belongings. Ruiz first sought help in gaining access to the trailer not from Sergeant Musquiz, but from Detective Puente, a colleague, and not a supervisor. Ruiz turned to Sergeant Musquiz only after Detective Puente was unavailable. After entering the trailer, Ruiz did not collect personal effects, but rather asked Sergeant Musquiz to obtain information for him on the Department's computer.

Substantial evidence supports the trial court's conclusion that Ruiz's entry into the trailer was a willful violation of order No. 5.

## V. Penalty

Substantial evidence supports the factual findings sustained by the hearing officer that were the basis for terminating Ruiz's employment. The penalty imposed by an administrative agency will not be disturbed in a mandamus proceeding absent a manifest abuse of discretion. (*Kazensky, supra,* 65 Cal.App.4th at p. 54.) "It is only in the exceptional case, when it is shown that reasonable minds cannot differ on the propriety of the penalty, that an abuse of discretion is shown. [Citations.]" (*Deegan v. City of Mountain View* (1999) 72 Cal.App.4th 37, 47.) No such showing has been made here. Sustaining Ruiz's discharge was not an abuse of discretion, and the trial court did not err by denying the petition for writ of mandate.

12

## DISPOSITION

The judgment is affirmed.  The City is awarded its costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J.
CHAVEZ

We concur:


_____, Acting P. J.
ASHMANN-GERST


_____, J.*
FERNS

_____

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.